*In the matter of the Petition of* A. E. PINKNEY *et al. for a writ of Habeas Corpus.*

ANTI-TRUST LAW—*Valid Statute.* The provisions of the "anti-trust law," being chapter 257 of the Laws of 1889, so far as they relate to the business of insurance, are covered by the title of the act, and are therefore valid.

*Original Proceeding in Habeas Corpus.*

ON May 12, 1891, a complaint was made charging that the petitioners did, in Leavenworth county, on the same day, "unlawfully agree and combine together and enter into, and then and there were in a contract,'agreement and combination with each, and each of them with certain other persons and corporations, the names of which are now unknown to this affiant, which said agreement, contract and combination is and was designed and intended to control the cost and rate of insurance within said state by threatening persons and affiant in the insurance business with injury to their [said persons'] business, if such persons refused to demand the same cost and rate as should be named by said defendants and by them and the other persons and corporations with whom they have combined, in violation of the laws of Kansas." A warrant was issued upon this complaint in similar terms, and the petitioners appeared before the justice issuing the warrant without being arrested, where a preliminary examination was had, at the con-

clusion of which the petitioners were held for appearance and trial at the next term of the district court, and bail was fixed at $200 each. The petitioners refusing to give a recognizance, a commitment was issued, under which they were taken into the custody of the sheriff, and from this custody they seek release by the writ of *habeas corpus.* Other facts are stated in the opinion of the court, filed on July 9, 1891.

*Thomas P. Fenlon,* and *E. F. Ware,* for petitioners.
*Lucien Baker,* and *J. H. Atwood,* for respondent.

The opinion of the court was delivered by

JOHNSTON, J.: The only question presented in behalf of the petitioners is the validity of what is known as the "antitrust law," so far as it relates to the business of insurance. (Laws of 1889, ch. 257.) The contention is, that the portion of the act pertaining to insurance is not clearly expressed in the title, as required by § 16, article 2, of the constitution, and is therefore void. The title is: "An act to declare unlawful trusts and combinations in restraint of trade and products, and to provide penalties therefor." Section 1 of that act embraces the provision with reference to the business of insurance, and is as follows:

"SECTION 1. That all arrangements, contract, agreements, trusts or combinations between persons or corporations, made with a view or which tend to prevent full and free competition in the importation, transportation or sale of articles imported into this state, or in the product, manufacture or sale of articles of domestic growth or product of domestic raw material, or for the loan or use of money, or to fix attorneys' or doctors' fees, and all arrangements, contracts, agreements, trusts or combinations between persons or corporations designed or which tend to advance, reduce or control the price or the cost to the producer or to the consumer of any such products or articles, or to control the cost or rate of insurance, or which tend to advance or control the rate of interest for the loan or use of money to the borrower, or any other services, are hereby declared to be against public policy, unlawful, and void."

Section 3 of the act provides as follows:

"SEC. 3. That all persons entering into any such arrangement, contract, agreement, trust, or combination, or who shall, after the passage of this act, attempt to carry out or act under any such arrangement, contract, agreement, trust, or combination described in sections 1 or 2 of this act, either on his own account or as agent or attorney for another, or as an officer, agent or stockholder of any corporation, or as a trustee, committee, or in any capacity whatever, shall be guilty of a misdemeanor, and upon conviction thereof shall be subject to a fine of not less than $100 and not more than $1,000, and to imprisonment not less than 30 days and not more than six months, or to both such fine and imprisonment, in the discretion of the court."

It thus appears that the body of the act contains a specific provision for the prevention of trusts or combinations which tend to control the cost or rate of insurance, and to punish all persons who enter into or attempt to carry out such trusts or combinations.

The question presented is, does the word "trade," used in the title, fairly indicate and include the provisions of the act with reference to insurance? It is argued that the usual meaning of the word should govern, and in that sense it has reference to the business of selling or exchanging some tangible substance or commodity for money, or the business of dealing by way of sale or exchange in commodities; and it is said that the use of the word in connection with that of "products," in the title, qualifies the meaning of "trade," and makes it all the more apparent that the construction contended for is the correct one. This is the commercial sense of the word, and possibly may be the most common signification which is given to it, but it is not the only one, nor the most comprehensive meaning in which the word is properly used. In the broader sense, it is any occupation or business carried on for subsistence or profit. Anderson's Dictionary of Law gives the following definition: "Generally equivalent to occupation, employment, or business, whether manual or mercantile; any occupation, employment or business carried on for profit, gain,

or livelihood, not in the liberal arts or in the learned professions." In Abbott's Law Dictionary the word is defined as "an occupation, employment or business carried on for gain or profit." Among the definitions given in the Encyclopædic Dictionary is the following: "The business which a person has learnt, and which he carries on for subsistence or profit; occupation; particularly employment, whether manual or mercantile, as distinguished from the liberal arts or the learned professions and agriculture." A like definition of the word is given in the Imperial Dictionary.

Rapalje & Lawrence's Law Dictionary, to which we are cited by the petitioners, gives the restricted definition: "Traffic; commerce; exchange of goods for other goods, or for money." It is the only authority, however, which uses the word in its commercial sense alone. Bouvier limits the meaning to commerce and traffic and the handicraft of mechanics; and we are also cited by the petitioners to the definition given by Webster, which specifically is: "The act or business of exchanging commodities by barter, or by buying and selling for money; commerce; traffic; barter." This author, however, gives the more enlarged meaning of the word as well, as follows: "The business which a person has learned, and which he engages in, for procuring subsistence, or for profit; occupation; especially mechanical employment as distinguished from the liberal arts, the learned professions, and agriculture; as we speak of the trade of a smith, of a carpenter, or mason, but not now of the trade of a farmer, or a lawyer, or a physician." The broader signification given to the word by most of the lexicographers would fairly embrace and cover the provision of the act with reference to the business of insurance. The title prefixed to an act may be broad and general, or it may be narrow and restricted, but in either event it must be a fair index of the provisions of the act; that is, the subject of the act must be clearly expressed by the title. Here a term is employed in the title which, if given the broader meaning, would render the provision in question valid, while, by giving it the narrower and perhaps more common meaning, it would render

the provision invalid. Which of these should be adopted? The mere generality of the title to an act does not render it objectionable, so long as the act has but one general object, and the title is such that neither the members of the legislature nor the people to be affected can be misled. Titles of a very general nature have been adopted in the legislation of this state, and their use has been encouraged and sustained. (*Bowman v. Cockrill*, 6 Kas. 311; *Division of Howard Co.*, 15 id. 194; *Woodruff v. Baldwin*, 23 id. 491; *Comm'rs of Marion Co. v. Comm'rs of Harvey Co.*, 26 id. 181; *The State ex rel. v. Sanders*, 41 id. 228.) That the broader meaning of the word "trade" was the one intended by the legislature, is manifest from the incorporation of the insurance provision in the body of the act. The meaning given by the legislature to the terms used for expressing the subject of the act should be considered by the court in determining the sufficiency of the title. While the legislature cannot extend the scope of the title by giving to a word therein a definition which is unnatural and unwarranted by usage, still, if the word admits of the construction given to it by the legislature, and can be properly used in a sense broad enough to include the provisions of the act, the intention of the legislature is entitled to great weight in determining the sufficiency of the title. In *Woodruff v. Baldwin*, 23 Kas. 494, it was said:

"Is it not more just and fair to say that the legislature has used the title in the broadest sense, a sense broad enough to include the subject-matter of this article, and that it meant by the expression 'criminal procedure' every proceeding resulting from crime, and not simply those for the prevention and punishment of crime? . . . The breadth and comprehensiveness of a title is a matter of legislative discretion. . . . The courts cannot modify a title, any more than they can change the body of the law. The title has to be construed even as the language of the act, and the courts may neither narrow nor enlarge the meaning which the legislature intended the title should have. Here is a title intrinsically broad and comprehensive. . . . Evidently the legislature intended by this title one whose scope was broad enough to include the article, and while there is a sense in which the article does not

treat of criminal procedure, yet we must impute to the legislature an intent to use the title in a broader sense."

How can it be said that the business of insurance is foreign to the title of this act, when the subject expressed in the title, taken in its broadest sense, and the one intended by the legislature, would embrace such business? How can anyone be misled as to this provision by the use of the word "trade," when the leading lexicographers and writers employ the word in a sense which is comprehensive enough to cover the provision? The fact that the narrower meaning of the word is the one most frequently used will not justify the court in restricting the meaning which the legislature intended it should have. Suppose the legislature had passed a law entitled "An act to prevent and punish the obstruction of highways," and in the body of the act included specific provisions declaring it to be unlawful to place obstructions upon railroads, as well as upon county roads, streets, and alleys, and prescribed severe penalties for the violation of its provisions: could it be said that the provision with reference to railroads was invalid because it was not indicated by the title to the act? The term "highway," as commonly used, applies to the public roads and streets over which all may travel, on foot, or horseback, or in carriages, and yet in its broader sense it includes railroads; and hence, when by the provisions of the act it appeared that the legislature used it in its broader sense, it could hardly be said that the provision with reference to railroads was unconstitutional because it was not fairly embraced in the title of the act. So here, the legislature having employed the word "trade" in its broadest sense, and one which fairly covers the provision assailed, we do not feel warranted in adopting the narrower meaning or in holding the act invalid. The rigid and technical rule contended for by the petitioners has never been applied to § 16, article 2, of the constitution. Although the provision is mandatory, it has been repeatedly held by this and other courts that a liberal interpretation should be placed upon the construction of language employed in the title to express the subject of the act. In *Bowman v. Cock-*

*rill,* supra, the court said that the provision "should be liberally construed; otherwise the legislature would be confined within such narrow rules that they would be greatly embarrassed in the proper and legitimate exercise of their legislative functions." In *City of Eureka v. Davis,* 21 Kas. 580, it was said that "it must be borne in mind that while the constitutional provision is mandatory, it must be applied in a fair and reasonable way; otherwise it would become a source of more injury than the ills it was designed to remedy." In *Philpin v. McCarty,* 24 Kas. 402, it was remarked that "this constitutional requirement is not to be enforced in any narrow or technical spirit. It was introduced to prevent a certain abuse, and it should be construed so as to guard against that abuse, and not to embarrass or obstruct needed legislation." In *City of Wichita v. Burleigh,* 36 Kas. 42, it was said that "a slight inaccuracy in the description of a thing in an act of the legislature, or in the title to the act, will not render the act void, where it may be known both from the act and the title thereto, and the circumstances then existing, what was meant and intended by the legislature." (See, also, *Woodruff v. Baldwin,* supra; *Comm'rs of Marion Co. v. Comm'rs of Harvey Co.,* supra; *The State v. Barrett,* 27 Kas. 213; Cooley's Const. Lim., 6th ed., 175, and cases cited.)

Another rule recognized and followed by all courts in determining the validity of legislative enactments is, that they will not be declared void if they can be upheld upon any reasonable grounds. If their invalidity is a matter of any reasonable doubt, the doubt must be resolved in favor of the act. (*Comm'rs of Cherokee Co. v. The State,* 36 Kas. 337.) Guided by these rules, we reach the conclusion, not without some doubt, however, that the provision of the act with reference to insurance is not foreign to the title of the act, nor violative of § 16, article 2, of the constitution. We do not desire or intend to determine at this time the validity of the act as to any profession, occupation or business beyond that of insurance.

Having decided the provision to be valid, and all other

questions being waived, it follows that the petitioners must be remanded.

VALENTINE, J., concurring.

HORTON, C. J.: I do not think the word "trade," in the title of chapter 257, Laws of 1889, clearly or fairly indicates or includes lawyers, doctors, insurance agents, or insurance companies.