THE STATE OF KANSAS v. WM. C. PHIPPS *et al.*

1. ANTI-TRUST LAW—*The Word "Trade."*  The word "trade," as defined by this court in the case of *In re Pinkney*, 47 Kas. 89, does not mean interstate commerce, nor was such a meaning within the contemplation of the court at the time the decision was rendered.

2. INSURANCE BUSINESS, *Not Interstate Commerce.*  The business of insurance, as ordinarily conducted in this state by insurance companies organized under the legislation of other states, is not interstate commerce.

3. FOREIGN INSURANCE COMPANY — *Violation of Anti-Trust Law — Prosecution of Agent.*  Foreign insurance companies doing business in this state, that combine to control and increase the rates of insurance on property within a city in this state, violate the provision of chapter 257 of the Laws of 1889, being "An act to declare unlawful trusts and combinations in restraint of trade and products, and to provide penalties therefor;" and their local agents who attempt to and do enforce such combined rates are subject to prosecution under the provisions of said act.

4. LEGISLATIVE POWER — *Valid Statute.*  The legislature of this state has the power to prescribe the conditions upon which an insurance company organized under and by virtue of the laws of another state can do business within the limits of the state of Kansas.

*Appeal from Labette District Court.*

PROSECUTION of *W. C. Phipps, Theo. Gardner* and four others for violating chapter 257 of the Laws of 1889, prohibiting unlawful trusts and combinations in restraint of trade.  On May 14, 1891, defendants *Phipps* and *Gardner* were found guilty, and each was fined $100 and costs.  Both appeal.  The opinion states the facts.

*E. F. Ware,* for appellants:

The state of Kansas has said that insurance is trade, and such is the recognized policy of the state.  *In re Pinkney*, 47 Kas. 89.

The state of Kansas by its insurance laws has recognized the interstate character of insurance.  Laws of 1879, ch. 116, § 1; Gen. Stat. of 1889, p. 973.

39—50 KAS.

*Query:* Perhaps the Kansas anti-trust law does not include foreign insurance companies, but leaves them, by concession, under the federal anti-trust law. Laws of 1889, ch. 257, § 6.

If the foreign insurance companies combine, the state has no adequate remedy, either by criminal or civil action. Laws of 1889, ch. 257, § 3; Crim. Code, §§ 21, 28, 115; *The State v. Gurnee,* 14 Kas. 111; Bish. Crim. Proc., § 53; *The State of Tennessee,* 36 Fed. Rep. 258; *The State, ex rel., v. Crawford,* 28 Kas. 726; *Jellico Case,* 46 Fed. Rep. 432; 11 Wall. 164; 2 Wash. C. C. 429; *Wisconsin v. Pelican,* 127 U. S. 265; *Dey v. Chicago,* 45 Fed. Rep. 82.

The definition of the term in the United States constitution, "commerce among the several states," is "*Intercourse.*" *Cooley v. Philadelphia,* 12 How. 299; *Telegraph Co. v. Telegraph Co.,* 5 Nev. 102; *Telegraph Co. v. Telegraph Co.,* 2 Wood. 643; *Telegraph Co. v. Telegraph Co.,* 96 U. S. 1; *Telegraph Co. v. Texas,* 105 id. 460; *Telegraph Co. v. Pendleton,* 122 id. 347; *Ratterman v. Telegraph Co.,* 127 id. 411.

Insurance, by the very law of its being, is cosmopolitan and interstate.

An insurance company can only be confined to one state by legislative imprisonment.

The commerce clause of the United States constitution necessarily includes insurance, and gives congress a right to legislate thereon.

The statistics of insurance show that the question of insurance is of national importance.

If insurance is of national importance, congress has the power to legislate upon it. *Council Bluffs v. Railroad Co.,* 45 Iowa, 351; *Bowman v. Chicago,* 125 U. S. 465; *Hall v. De Cuir,* 95 id. 495; *Crandall v. Nevada,* 73 id. 42; *Cooley v. Port,* 53 id. 299; *Pensacola v. Western,* 96 id. 1; *Munn v. Illinois,* 94 id. 113.

The federal anti-trust law will, by its terms, cover the combines of insurance companies. 26 U. S. Stat. 209; *Walling v. Michigan,* 116 U. S. 456.

The doctrine of *Paul v. Virginia* has been overruled as re-

gards insurance. 78 U. S. 183; 5 Otto, 683; *Wrought v. Johnson,* 84 Ga. 784; *McCall v. California,* 136 U. S. 104.

Outside of the commerce clause, power to legislate has been given to congress, by implication, from the grant to the judiciary. Const. of Kas., art. 3, § 2; *Legal Tender Cases,* 110 U. S. 440.

The constitution is to be interpreted in accordance with the will of the people now exercising power. *Dartmouth College Cases,* 4 Wheat. 644, 645; The Unwritten Const., Tiedeman, pp. 144, 145, 149, 150, 151.

The decision in *In re Pinkney* was a grant of power to the United States, and the federal courts will adopt and follow it to its legal conclusion. *McKeen v. DeLancy,* 5 Cranch, 22; *Green v. Neal's Lessee,* 6 Pet. 291; *Louisville v. Mississippi,* 133 U. S. 587, 589, 591.

*John N. Ives,* attorney general; and *J. R. Hill,* county attorney, by *F. H. Atchinson,* deputy, for The State:

From the multitude of cases supporting the proposition that state laws, although incidentally affecting interstate commerce, are valid, we cite: *License Cases,* 5 How. 632; *City of New York v. Miln,* 11 Pet. 101; *Cooley v. Board of Wardens,* 12 How. 299; *The James Gray v. Fraser,* 21 id. 184; *Wilson v. Black,* 2 Pet. 245; *License Tax Cases,* 5 Wall. 469; *Munn v. Illinois,* 4 Otto, 113; *Nash v. Page,* 80 Ky. 539; *Butler v. Chambers,* 36 Minn. 69 (1 Am. Rep. 638, and note); *The State v. Campbell,* 64 N. H. 402; *People v. Budd,* 117 N. Y. 1 (15 Am. Rep. 460.)

Insurance corporations have no right to do any business in the state, except upon the terms and conditions imposed by the state. *Bank v. Earle,* 13 Pet. 519; *Paul v. Virginia,* 8 Wall. 168; *Doyle v. Continental,* 4 Otto, 539; *Ducat v. Chicago,* 10 Wall. 410; *Liverpool v. Insurance Co.,* id. 556; *Telegraph Co. v. Treasurer,* 28 Ohio St. 539; *Insurance Co. v. Commonwealth,* 87 Pa. 173; *People v. Fire Association,* 92 N. Y. 311; *City of Leavenworth v. Booth,* 15 Kas. 636.

That insurance is not interstate commerce, we rely upon

*Paul v. Virginia*, 8 Wall. 168; *City of Leavenworth v. Booth*, 15 Kas. 636; *Liverpool Ins. Co. v. Massachusetts*, 10 Wall. 556; *List v. Commonwealth*, 118 Pa. St. 322 (10 Cent. Rep. 586, and 12 Am. Rep. 277); *Crutcher v. Commonwealth*, 11 Sup. Ct. Rep. 854.

Counsel for appellants insists that *Paul v. Virginia* should be overruled, and the doctrines therein announced extinguished. But it would seem that, if any principle of law had reached the dignity of *stare decisis*, the principle announced in that case should have reached it. It has been cited with approval in *Ward v. Maryland*, 12 Wall. 430; *Railway Co. v. Whitton*, 13 id. 283; *Slaughter-House Cases*, 16 id. 76; *Insurance Co. v. Morse*, 20 id. 445; *Doyle v. Insurance Co.*, 4 Otto, 539; *Telegraph Co. v. Telegraph Co.*, 6 id. 12; *Boom Co. v. Patterson*, 8 id. 407; *United States v. Steffens*, 10 id. 95; *Railway Co. v. Koontz*, 14 id. 11; *Steamship Co. v. Tugman*, 16 id. 121; *St. Clair v. Cox*, 16 id. 356; *United States v. Harris*, 16 id. 643; *Civil Rights Cases*, 109 U. S. 47; *Railroad Co. v. Gebhard*, 109 id. 537; *Crutcher v. Commonwealth*, 11 Sup. Ct. Rep. 854.

Besides our own state (15 Kas., *supra*), it has been adopted as the law in Pennsylvania: *Thorne v. Insurance Co.*, 80 Pa. St. 28; *Germania &c. v. Commonwealth*, 85 id. 513; *Insurance Co. v. Commonwealth*, 87 id. 173.

It has been adopted as the law in the Virginia state court: *Insurance Co. v. Warwick*, 20 Gratt. 614. In Michigan: *People v. The Judge*, 21 Mich. 577. In Nevada: *Ex parte Martin*, 7 Nev. 140. In Illinois: *Assurance Co. v. Rosenthal*, 55 Ill. 85; *Carrell v. City of East St. Louis*, 67 id. 568. In Wisconsin: *Morse v. Insurance Co.*, 30 Wis. 496; *State v. Doyle*, 40 id. 175. In Ohio: *Telegraph Co. v. Treasurer*, 28 Ohio St. 539. In Maine: *Chaffee v. Bank*, 71 Me. 514. In New York: *People v. Fire Association*, 92 N. Y. 311.

Opinion by SIMPSON, C.: W. C. Phipps and Theo. Gardner, with four others, were complained against by information in the district court of Labette county upon a charge of hav-

ing violated chapter 257, Laws of 1889, being "An act to declare unlawful trusts and combinations in restraint of trade and products, and to provide penalties therefor." It seems from the record that only Phipps, Gardner, Neely and McClure were arrested. The other two defendants were not served with process. At the trial, the defendants Phipps and Gardner were found guilty, while the defendants James L. McClure and George A. Neely were found not guilty. Each of the appellants was fined $100 and costs. The specific charge was, that the accused were agents of various insurance companies organized under the laws of the states of New York, Colorado, Minnesota, and Connecticut; that they were doing business in this state, and that said insurance companies had combined to control the price and rate of insurance in the city of Oswego, Labette county, Kansas; that by agreement they had established certain rates larger than those existing before said combination; and that the accused, as agents and adjusters of said companies, were engaged in compelling local agents to observe such combination rates so established by said companies. The defendants Phipps and Gardner appeal to this court.

The counsel for the appellants contends (to state his proposition in general terms) that chapter 257, Laws of 1889, so far as it affects foreign insurance companies or their agents, is in conflict with the powers of congress to regulate commerce among the several states, and for that reason void; or, that the federal anti-trust law of July, 1890, (26 U. S. Stat. 209,) is exclusive of the state law, and that all prosecutions for such offenses as are charged in this information must be commenced in the federal courts, and hence these appellants must be discharged. The counsel has filed an elaborate brief, and made a long oral argument, discussing the anti-trust law of this state and of the United States, the commerce clause of the federal constitution, and the power of congress to legislate on that subject, as well as other branches of inquiry that may be involved in the proper discussion of this appeal.

The major premise of the argument in favor of the discharge of the appellants is, that this court has decided in a recent case that insurance is "trade," within the meaning of the provisions of the anti-trust law of this state, under which these appellants were prosecuted and convicted. The exact question in the case of *In re Pinkney*, 47 Kas. 89, was, whether the word "trade," in the title to the anti-trust law, (being chapter 257, Laws of 1889,) so far as it relates to the business of insurance contained in the first section of the act, was broad enough to fairly indicate that such a provision with respect to insurance was a part of the act; and the court held the act valid, so far as it related to the business of insurance, that being covered by the title of the act. This is what the court did say:

"The question presented is, Does the word 'trade,' used in the title, fairly indicate and include the provisions of the act with reference to insurance? It is argued that the usual meaning of the word should govern, and in that sense it has reference to the business of selling or exchanging some tangible substance or commodity for money, or the business of dealing by way of sale or exchange in commodities; and it is said that the use of the word in connection with that of 'products,' in the title, qualifies the meaning of 'trade,' and makes it all the more apparent that the construction contended for is the correct one. This is the commercial sense of the word, and possibly may be the most common signification which is given to it; but it is not the only one, nor the most comprehensive meaning in which the word is properly used. In the broader sense, it is any occupation or business carried on for subsistence or profit. . . . The broader signification given to the word by most of the lexicographers would fairly embrace and cover the provisions of the act with reference to the business of insurance. The title prefixed to an act may be broad and general, or it may be narrow and restricted, but in either event it must be a fair index of the provisions of the act. . . . That the broader meaning of the word 'trade' was the one intended by the legislature, is manifest from the incorporation of the insurance provision in the body of the act. . . . How can it be said that the business of insurance is foreign to the title of

the act, when the subject expressed in the title — taken in its broadest sense, and the one intended by the legislature — would embrace such business?"

So it may be fairly said, as it is in the printed brief of counsel for appellants, that a legislative and judicial definition of insurance is that it is "trade" within the meaning of the anti-trust law of this state.

The minor premise of counsel is that trade, as defined by this court in the case of *In re Pinkney*, supra, means interstate commerce. This is an assumption, rather than a fair and logical deduction from the language used in the opinion. Trade between citizens of this state is not interstate commerce. Trade between a citizen of this state and a citizen of another state temporarily in this state is not interstate commerce. In fact, at the time the opinion in the case of *In re Pinkney* was written there were no facts in the case that would suggest to the mind of the writer any question as to interstate commerce, because nowhere in the complaint, proceedings or record of that case is it hinted that the unlawful combination intended and designed to control the cost of insurance was made or attempted by other persons than residents of the state of Kansas. So that it can be positively asserted that the word "trade," as used in that decision, meant then and means now trade between citizens of this state — domestic trade, if you please — and not trade or commerce between citizens of different states, or interstate commerce.

It is a conclusive presumption of the law that this court knew that the legislature of this state had no power to regulate interstate commerce, and the presumption is equally strong and conclusive, that by the use of the word "trade" the intercourse between citizens of different states, that constitutes interstate commerce, was not in contemplation. It has been judicially determined, time and time again, by the highest judicial authority in the land, that issuing a policy of insurance is not a transaction of commerce. The supreme court of the United States, in the case of *Paul v. Virginia*, 8 Wall. 168, in an elaborate opinion by Mr. Justice Field, say:

"The policies are simple contracts of indemnity against loss

by fire, entered into between the corporations and the assured, for a consideration paid by the latter. These contracts are not articles of commerce in any proper meaning of the word. They are not subjects of trade and barter, offered in the market as something having an existence and value independent of the parties to them. They are not commodities to be shipped or forwarded from one state to another, and then put up for sale. They are like other personal contracts between parties which are completed by their signature and the transfer of the consideration. Such contracts are not interstate transactions, though the parties may be domiciled in different states. The policies do not take effect, are not executed contracts, until delivered by the agent in Virginia. They are, then, local transactions, and are governed by the local law. They do not constitute a part of the commerce between the states any more than a contract for the purchase and sale of goods in Virginia by a citizen of New York whilst in Virginia would constitute a portion of such commerce. In *Nathan v. Louisiana*, 8 How. 73, this court held that a law of that state imposing a tax on money and exchange brokers, who dealt entirely in the purchase and sale of foreign bills of exchange, was not in conflict with the constitutional power of congress to regulate commerce. 'The individual thus using his money and credit,' said the court, 'is not engaged in commerce, but in supplying an instrument of commerce. He is less connected with it than the shipbuilder, without whose labor foreign commerce could not be carried on.' And the opinion shows that, although instruments of commerce, they are the subjects of state regulation, and, inferentially, that they may be subjects of direct state taxation. 'In determining,' said the court, 'on the nature and effect of a contract, we look to the *lex loci* where it was made, or where it was to be performed; and bills of exchange, foreign or domestic, constitute, it would seem, no exception to this rule. Some of the states have adopted the law merchant, others have not. The time within which a demand must be made on a bill, a protest entered, and notice given, and the damages to be recovered, vary with the usages and legal enactments of the different states. These laws, in various forms and in numerous cases, have been sanctioned by this court.' And again: 'For the purposes of revenue the federal government has taxed bills of exchange, foreign and domestic, and promissory notes, whether issued by individuals or banks. Now, the federal government can no more regulate the commerce of a state

than a state can regulate the commerce of the federal government; and domestic bills or promissory notes are as necessary to the commerce of a state as foreign bills to the commerce of the union. And if a tax on an exchange broker who deals in foreign bills be a regulation of foreign commerce, or commerce between the states, much more would a tax upon state paper, by congress, be a tax on the commerce of a state.' If foreign bills of exchange may thus be the subject of state regulation, much more so may contracts of insurance against loss by fire."

The doctrine of this case was distinctly affirmed by the supreme court in the case of *Insurance Co. v. Massachusetts*, 10 Wall. 566, in which Mr. Justice Miller says:

"The case of *Paul v. Virginia* decided that the business of insurance, as ordinarily conducted, was not commerce, and that a corporation, having an agency by which it conducted business in another state, was not engaged in commerce between the states."

The case of *Paul v. Virginia* was distinctly affirmed in the cases of *Doyle v. Continental Ins. Co.*, 94 U. S. 535, and *Fire Association v. New York*, 119 id. 110, and has been cited approvingly in many other federal and numerous state decisions. It must now be regarded as the law of the land, in spite of the facetious criticisms of counsel for appellants.

In *Paul v. Virginia*, a statute of that state required that every insurance company not incorporated by Virginia should, as a condition of carrying on business in Virginia, deposit securities with the state treasurer and obtain a license; and another statute made it a penal offense for a person to act in Virginia as agent for an insurance company not incorporated by Virginia without a license. Paul, having acted as such agent without a license, was convicted and fined under the statute. So that case arose out of an attempt on the part of the state of Virginia to enforce its penal laws for the regulation of the business of insurance within its borders. And in this respect it is very similar to the case we are now discussing.

In the case of *City of Leavenworth v. Booth*, 15 Kas. 628,

which was the prosecution of a local agent of a foreign insurance company for a violation of a city ordinance that required foreign insurance companies to pay certain license taxes for the privilege of doing business in said city, this court, by Mr. Justice VALENTINE, said:

"It must be remembered that the insurance company involved in this controversy is a foreign insurance company, having no rights in this state except such as the state may see fit to confer upon it. It has no power to do business in Kansas by virtue of its organization in Wisconsin. It has no power to do business in Kansas by virtue of the laws of Wisconsin, or by virtue of the constitution or laws of the United States, or by virtue of all combined. (*Paul v. Virginia,* 8 Wall. 168; *Ducat v. Chicago,* 10 id. 410; *Liverpool Ins. Co. v. Massachusetts,* 10 id. 556.) It can do business in Kansas only under the laws of Kansas, and by permission from the state of Kansas. This state might absolutely exclude it, or might require that it do business only under a license, and might require that it not only get a license from the state, but also that it get a license from every city, county or village in which it should attempt to do business. The state may permit such insurance company to come into the state under such just restraints and regulations as the state may choose. Hence the state is not bound to permit said insurance company to come to this state, (as individual citizens of other states have a right to do,) and then, for the purpose of raising revenue, resort only to the ordinary modes of taxation. On the contrary, the state, without resorting to taxation at all, may require that such insurance company shall pay for the privilege of coming into the state, and of doing business therein, and may require that it shall not only pay a sum to the state for the privilege of doing business therein, but that it shall also pay a sum to every municipal corporation in the state in which it shall attempt to do business. And all this the state may do without violating any provision of its own constitution."

This case asserts in the strongest possible language the right of this state to regulate the business of insurance within its borders, not only with reference to those insurance companies that may be organized under our laws, but especially with regard to insurance companies organized under

the laws of sister states, doing or desiring to do business in this state.

At this writing, it is probable that every state in the union has passed laws upon this subject, until it may be said that the right of state regulation of the business of insurance is universally recognized and upheld. So it can be confidently said that this court, when it held, in *In re Pinkney*, that insurance was "trade," did not contemplate that the term used could be tortured into interstate commerce; and it can be said with equal confidence that the settled law of this country is that the issuing of a policy of insurance is not a transaction of commerce. As we have seen, neither the major nor minor premise of the argument of counsel for the appellants is sound, and the inevitable conclusion — that congress alone has power to regulate interstate commerce and to provide penalties against insurance trusts and combinations—does not follow. The court did not mean "trade," as synonomous with interstate commerce. The business of insurance is not interstate commerce. The state has power to regulate and control, and to provide penalties for the transgression of its regulating and controlling statutes, of the business of a foreign insurance company within its boundaries. If the theory of the counsel for the appellants ever ripens into authoritative judicial decision, the power of the state to regulate and control the business of insurance within its limits is gone. The insurance department, and every act upon the statute books for the protection of the policy holders, and every line looking to the punishment of the violators of its public policy in this respect, goes with it, except, possibly, as to such companies as may be organized and operated under the laws of the state.

We recommend that the judgment of conviction be affirmed.

By the Court: It is so ordered.

VALENTINE and JOHNSTON, JJ., concurring.

HORTON, C. J.: I dissent from the judgment ordered, not, however, upon the ground of the interstate character of insurance as urged by the attorney for the appellants, but because of my reasons for my dissent in the case of *In re Pinkney*, 47 Kas. 89. The subject of an act must be clearly expressed in its title. Chapter 257 is penal in its nature. The title thereof should not be extended by construction. Common or popular words are to be understood in a popular sense. In the construction of statutes, a word which has two significations should ordinarily receive that meaning which is generally given to it. Considering the provisions of the constitution concerning titles to bills or acts, and the foregoing cardinal rules of construction, I do not think the word "trade," used in the title of said chapter 257, Laws of 1889, indicates or includes, in any public sense or as generally understood, lawyers, doctors, insurance agents, or insurance companies. When I speak of the profession or business of a lawyer, a doctor, or an insurance agent, I do not say he is a trader or tradesman, or is in trade, nor that he is carrying on a trade, or doing well in his trade. I have never heard any person, in referring to the success of a lawyer, a doctor, or an insurance agent, say of either, that he is prosperous in his trade, or that he is doing well in carrying on his trade, or that he is an energetic trader. Indeed, I never have heard insurance agents spoken of as "in trade."

I think the decisions referred to in the foregoing opinion, except the one of this court in 47 Kas. 89, all tend to show that insurance is not "trade." The supreme court of the United States, in the case of *Paul v. Virginia*, cited, say insurance policies "are not subjects of trade and barter, offered in the market as something having an existence and value independent of the parties to them; they are not commodities to be shipped or forwarded from one state to another and then put up for sale." (8 Wall. 168.)

VALENTINE, J.: I concur in the decision of this case and

in affirming the judgment of the court below. It is evident from the body of the act, (chapter 257 of the Laws of 1889,) that the legislature, in using the word "trade" in the title to the act, intended to include insurance, but did not intend to include interstate commerce; and it is the duty of the courts to carry out the will and intention of the legislature when enacted into law, and when the same can be fairly ascertained, and not to defeat the same, although the legislature may not have used the most appropriate language in expressing its will and intention. There is nothing in this case with reference to lawyers or doctors or their business or profession. Hence, it is wholly unnecessary to say anything with reference thereto.