STATE OF NEBRASKA, APPELLANT, V. AMERICAN SURETY
COMPANY, APPELLEE.

FILED NOVEMBER 14, 1911.   No. 16,559.

Insurance: FOREIGN COMPANIES: FILING STATEMENTS. Insurance com-
panies are not included in the title of article II, ch. 91a, Comp. St.
1911, and are not required to comply with the requirements of
that act by filing in the office of the attorney general the state-
ment described therein.

APPEAL from the district court for Lancaster county:
ALBERT J. CORNISH, JUDGE.   Affirmed.

Grant G. Martin, Attorney General, and George W.
Ayres, for appellant.

Montgomery & Hall and Hall, Woods & Bishop, contra.

REESE, C. J.

This action was commenced in the district court for
Lancaster county by the attorney general, on behalf of
the state, to enjoin the defendant from transacting or
carrying on the business of a surety company within the
state, the averment of 'the petition being that it had failed
and refused to file in the office of the attorney general
the statement required by section 4, art. II, ch. 91a,
Comp. St. 1911. It is alleged in the petition, in substance,
that the defendant is a corporation, incorporated under
the laws of the state of New York, and is engaged in the
transaction of the business of a surety company in this
state, having established agents throughout the state;
that it is not a Nebraska corporation nor a corporation
whose stockholders are personally liable for its debts,
and is not engaged in any of the lines of business named
in the exception contained in section 4 of the anti-trust
laws of this state; that, as the defendant corporation is
engaged in business in this state, it is its duty to file the
statement in the office of the attorney general as required

by said act, but that it has refused so to do, and that, by reason of its failure to comply with the law, it is unlawfully engaged in business in this state. The prayer is that it be enjoined from further carrying on its business within the state. The defendant demurred upon the ground that said petition did not state facts sufficient to constitute a cause of action. The demurrer was sustained by the district court, and the cause dismissed. Plaintiff stood upon its petition and appeals, assigning as error the ruling in sustaining the demurrer.

A wide range is taken in the briefs, and many questions are therein presented and were also discussed in the oral arguments. The principal and underlying question involved is as to the construction to be given to what is known as the "Anti-Trust Law" of this state. An act, commonly known as the "Junkin Act," was passed by the legislature in 1905 (laws 1905, ch. 162), the title to which is, "An act to protect trade and commerce against unlawful restraints and monopolies, and to prohibit the giving or receiving of rebates on the transportation of property, and to provide a penalty for the violation thereof." Section 4 of the act is as follows: "That from and after the 30th day of June, in the year 1906, no corporation, joint stock company, or other association, whose stockholders are not personally liable for their debts, except corporations incorporated under the laws of the state of Nebraska, and common carriers and corporations owning or using property exclusively in connection with the business of transportation, and corporations engaged in furnishing additional accommodations to passengers as such while being carried by such carriers, shall engage in business within this state, or continue to carry on such business, unless it shall comply with the following conditions." The conditions imposed are too long to be here copied, and it is only necessary to say that the corporations included within the provisions of the act are required to file a statement in the office of the attorney general making quite a complete showing of the organi-

zation and financial status of the corporation or associa-
tion. This statement the defendant did not file, and
claims that it, being an insurance company, is not re-
quired so to do by the act. As will be observed, the title
to the act is to protect "trade and commerce" against
unlawful restraints and monopolies. It is insisted by
defendant that the insurance business cannot be held to
be included within those two words; that, if it cannot be
so included, the provisions of section 4 are not to be
applied to it. This last proposition is conceded by the
attorney general's department, but it is strenuously in-
sisted that that business is included, and that foreign
insurance companies are required to file the statement,
and hence that duty is devolved upon defendant. The
demurrer admits all well-pleaded, issuable material facts
alleged, and hence it is taken as true that the defendant
is a foreign corporation doing business in this state,
that its stockholders are not personally liable for its
debts, and that it is not within the exception contained
in section 4 of the act. The sole question to be here de-
cided is: Is defendant engaged in "trade" or "commerce"
within the meaning of the title to the act. The terms
"trade" and "commerce" have received a great number
of definitions by the courts, but cannot all be applied
to this case. We should keep in view the sense and
connection in which they occur · in the act under
consideration.

One of the cases cited by the attorney general is *In re
Pinkney,* 47 Kan. 89, 27 Pac. 179. The title to the act
under consideration in that case was, "An act to declare
unlawful trusts and combinations in restraint of trade
and products, and to provide penalties therefor." In a
section of the act it was provided that all contracts or
arrangements to control the cost or rate of insurance
was prohibited. The supreme court of Kansas held, cor-
rectly we think, that the title to the act was sufficiently
comprehensive to include "trusts and combinations" in
restraint of insurance; that, in the sense in which the

word "trade" was used in the title, it would include business, occupation, employment, etc.; and that a "combination" in restraint of the business of insurance could be prohibited under the title to the act. When we compare the titles to the two acts and the purposes of the legislature in the two instances, we are unable to derive much benefit from a consideration of the Kansas case. The decision was rendered by two of the three judges, and they say: "We reach the conclusion, not without some doubt, however, that the provision of the act with reference to insurance is not foreign to the title of the act," nor violative of the constitution. One member of the court dissented. In the majority opinion it is said: "The meaning given by the legislature to the terms used for expressing the subject of the act should be considered by the court in determining the sufficiency of the title. While the legislature cannot extend the scope of the title by giving to a word therein a definition which is unnatural and unwarranted by usage, still if the word admits of the construction given to it by the legislature, and can be properly used in a sense broad enough to include the provisions of the act, the intention of the legislature is entitled to great weight in determining the sufficiency of the title"—citing *Woodruff v. Baldwin,* 23 Kan. 491. It is to be observed, as we have shown, that the title to the act then under consideration was to declare unlawful trusts and combinations in restraint of trade and products. In the majority opinion it is held that the language of the title is of doubtful meaning, whether in an extended or limited sense, and that the provision of the first section of the act, which declares that "all arrangements, contracts, agreements, trusts or combinations between persons or corporations * * * which tend to advance, reduce or control the price or the cost to the producer or to the consumer of any such products or articles, or to control the cost or rate of insurance * * * are hereby declared to be against public policy, unlawful, and void," shows an interpretation or

meaning given to the word "trade" in its extended sense, and that the act was thereby brought within the protection of the constitution. In the act now under consideration we have no such aid, but are limited to the words "trade and commerce" in the sense in which they are used in the title, unaided by legislative interpretation, as in the Kansas case.

In *Queen Ins. Co. v. State,* 86 Tex. 250, 24 S. W. 397, the title to the act under which the suit was brought was, "An act to define trusts, and to provide for penalties and punishment of corporations, persons, firms, and associations of persons connected with them, and to promote free competition in the state of Texas." The suit was against some 57 insurance companies, and it was alleged that they had combined together to fix the rate of commissions of local insurance agents, and to fix and establish uniform rates of insurance throughout the state, and which they were enforcing to the detriment of the public, and the relief sought was an injunction restraining the accused companies from doing business within the state. Under this title the act defined trusts to be a combination of capital, skill, or acts by two or more persons to create or carry out restrictions in trade; to fix any standard or figure whereby the price of any article or commodity of merchandise, produce or commerce intended for sale, use or consumption, to the public should be controlled or established; or to enter into any contract by which they shall bind themselves not to sell or dispose of any article or commodity, or article of trade, merchandise, use, commerce or consumption below a common standard figure, or settle the price thereof between themselves and others. The supreme court of that state held that insurance did not come within the terms of the act, holding, in effect, that it was neither "trade," "commerce" nor "commodity," and the injunction was denied.

The case of *Beechley v. Mulville,* 102 Ia. 602, is cited by the attorney general. In that case the statute under consideration provided that if any corporation organized

for transacting or conducting any kind of business in the state, or any partnership or individual shall create, enter into, become a member of or party to any pool, trust, agreement, combination or confederation with any other corporation, partnership or individual to regulate or fix the price of oil, lumber, coal, grain, flour, provisions, or any other commodity or article whatever, such persons should be guilty of a conspiracy, etc. A number of persons entered into a conspiracy to fix insurance rates, imposing penalties and a loss of business upon any agent who should deviate from the standard of prices and rates fixed. The action was for damages by one of the conspirators against the others, upon the ground that he had refused to continue to be governed by the "compact," and for such refusal his business had been destroyed by his co-conspirators. It was contended by the defense that the business of insurance was not within the provisions of the act, and that their compact or agreement was lawful. But the court held otherwise, basing its decision on the sweeping language of the act. It was also held that the plaintiff could not recover, as the action of the defendants was but carrying out the written compact between themselves and plaintiff.

The case of *Betz v. Maier*, 12 Tex. Civ. App. 219, cited by plaintiff, affords little, if any, light upon the question before us. The appellee in that case had levied an attachment upon an iron safe belonging to the appellant, who was an insurance agent; the safe being used by him in his business as a receptacle for the safe keeping of his policies and other papers in use in his business. He claimed the safe was exempt under the statute which exempted all tools, apparatus and books belonging to any trade or profession. It was held that under the rule requiring a liberal construction of exemption laws the safe was exempt, the business of an insurance agent being a trade or profession.

As applicable to the statute now under consideration, we can gather but little light from the decided cases.

This is not a case involving the question of the legality or illegality of any trust agreement or combination. It may be that had the legislature in specific terms, as in the Kansas case (*In re Pinkney, supra*), included the subject of insurance in the section requiring the filing of the statement, that fact might have furnished a legislative construction or interpretation of the words "trade and commerce" as used in the title and thus brought the provision within it. But such is not the case. The whole trend of the title seems to be to "protect trade and commerce from unlawful restraints and monopolies" in the traffic and transportation of property. Such seems to be the purpose of the whole act, with nothing to show a different intent. It is true that the words might have been used in a different sense, but the context seems to limit their meaning. This being true, it must be apparent that the requirement of the annual statement, as provided for in the fourth section of the act, applies only to the quality of "trade and commerce" referred to in the title, and that insurance companies are not included.

The judgment of the district court is

AFFIRMED.

ROSE, J., took no part in this decision.