STATE OF NEBRASKA, APPELLANT, V. AMERICAN SURETY COMPANY, APPELLEE.

FILED MARCH 12, 1912. No. 16,559.

1. **Statutes: POWER OF LEGISLATURE: DEFINITION OF TERMS.** It is within the power of the legislature within reasonable limitations to define the terms used in its enactments. It cannot extend the definition of a term so as to denote ideas entirely without its province, but it may properly use the word in the broadest sense and include within its meaning any thought not unwarranted by usage, though perhaps not entirely within its ordinary definition.

2. **Monopolies: CONSPIRACY TO FIX INSURANCE RATES.** By the provisions of chapter 79, laws 1897, commonly known as the "Gondring act," combinations to prevent competition in insurance of any kind, or to settle the price of the same, are declared to be a trust and an unlawful conspiracy against trade and business.

3. ———: ———: "TRADE AND BUSINESS": "TRUST." The words "trade and business" in this act are intended as a generic term embracing all the transactions and practices mentioned in the act, and the term "trust" is properly made to include combinations or contracts in restraint of competition in insurance.

4. **Statutes: CONSTRUCTION: MONOPOLIES.** The entire series of statutes directed against combinations and monopolies should be considered as parts of a connected system, and recourse may be had in considering the intention of the legislature in the later acts to definitions of terms used in prior acts in connection with the same subject matter.

5. ———: UNLAWFUL COMBINATIONS: SCOPE OF ACT. Considering the prior legislative definitions, a combination to prevent competition in insurance may properly be a subject for legislation under the title of "An act to protect trade and commerce against unlawful restraints and monopolies," etc. Laws 1905, ch. 162.

6. ———: ———: ———. The purpose of section 4 of that act

requiring certain statements and undertakings to be filed in the office of the attorney general is to aid him in enforcing the statute, and the subject matter of the section falls properly within the scope of the title of the act.

7. **Insurance:** FOREIGN CORPORATIONS: STATUTORY PROVISIONS. Permission granted by former statutes to foreign surety companies to do business in this state, under certain conditions, does not create a contract between such companies and the state, but, even if it did, the state, under its police powers, would still have the right to regulate the business and by additional legislation to require such reports and statements as seemed to it necessary to that end.

8. ——: ——: ——. A state may impose additional conditions on the right of a foreign corporation to do or engage in business within this state, and, unless such additional requirements change or affect those imposed by prior acts of the legislature, the act imposing the additional conditions is not amendatory.

9. **Monopolies:** ENFORCEMENT OF STATUTE. Under the terms of the Junkin act (laws 1905, ch. 162), its administration and enforcement are committed to the attorney general and the governor of the state, and it is made the duty of the attorney general to institute and prosecute such proceedings in any court of competent jurisdiction as may be necessary to carry into effect its provisions.

REHEARING of case reported in 90 Neb. 154. *Former judgment vacated, and judgment of district court reversed.*

LETTON, J.

The former opinion in this case is reported in 90 Neb. 154. The principal contention now made by the attorney general on rehearing is that the provisions of chapter 79, laws 1897, commonly known as the "Gondring act," when considered in connection with the provisions of chapter 162, laws 1905, commonly known as the "Junkin act," made it the duty of the defendant to file the statements and undertakings required by section 4 of the latter act; that these statutes must be considered and construed together, and that, since a combination to prevent competition in insurance is within the definition of a "trust" by the terms of the former act, it was the intention of the

legislature to protect trade from such an unlawful restraint on competition by the latter act, and, consequently, that a foreign insurance company is among those corporations required to make report thereunder.

The defendant insists that the Junkin act is by its title restricted to "trade and commerce;" that insurance does not fall in either of these classes; that insurance is a distinct and separate subject of legislation; that since 1905 the state has not required such reports to be filed and that its right to the same, if one ever existed, has been waived, and it is now estopped to insist upon it; that section 4 is in violation of the constitution; that the penalties imposed by the act are not for failure to file the statements required by section 4; and that if insurance is held to be commerce the act is an attempted regulation of interstate commerce, and therefore void.

At the outset of the discussion it is proper to say that we agree with the defendant that the requirements of section 4 can only apply to such persons or corporations as may reasonably be considered as being embraced within the title of the Junkin act. We adhere to the view expressed in the former opinion that generally the words "trade and commerce" would not include the business of insurance, but we have no doubt that it is within the power of the legislature within reasonable limitations to include within the concept and definition of a term ideas which may not unreasonably be included therein, though perhaps not strictly within its ordinary definition. The line of demarcation between the ideas expressed by the words "trade and business" and "trade and commerce" is somewhat hard to draw, and the legislature may without violence to any constitutional limitations and with propriety embrace within the definition of one term or the other transactions which may lie close to the border line. Statutory definition often relieves the court of questions otherwise hard to solve when endeavoring to ascertain the meaning of the legislature, and is a practice which is to be commended if exercised within proper limitations.

As was said in *In re Pinkney,* 47 Kan. 89, 27 Pac. 179, which was quoted in the former opinion: "While the legislature cannot extend the scope of the title by giving to a word therein a definition which is unnatural and unwarranted by usage, still, if the word admits of the construction given to it by the legislature, and can be properly used in a sense broad enough to include the provisions of the act, the intention of the legislature is entitled to great weight in determining the sufficiency of the title."

Was it the intention of the legislature that the prevention of competition in insurance should be included within the title?

The title of the Gondring act, so far as necessary to consider here, is "An act to define trusts and conspiracies against trade and business, declaring the same unlawful and void, and providing means for the suppression of same." Section 1 of that act, so far as essential here, is as follows: "That a trust is a combination of capital, * * * skill or acts by two or more persons, or by two or more of them for either, any or all of the following purposes: * * * (3) to prevent competition in insurance, either life, fire, accident or any other kind. * * * (5) To make or enter into, carry on or carry out any contract, obligation or agreement of any kind or description * * * by which they shall in any manner establish or settle the price of any article of merchandise, commodity, or of insurance, fire, life or accident, * * * or by which they shall agree to pool, combine or unite any interest they may have in connection with the sale, production or transportation of any such article of merchandise, product or commodity or the carrying on of any such business, that its price might in any manner be affected thereby." By section 2 it is declared: "That any and all acts by any person or persons carrying on, creating, or attempting to create, either directly or indirectly, a trust as defined in section one (1) of this act, are hereby declared to be a conspiracy against trade and business and unlawful," etc. By section 13 of the act it was provided:

"That the word 'person' or 'persons' wherever used in this act shall be deemed to include firm, firms, corporation, corporations, partnerships, copartnerships and associations existing under, permitted or authorized by the laws of the United States, this state or any other state, or the laws of any foreign country or territory of the United States." By this statute, therefore, a combination for the purpose of preventing competition in insurance of any kind is defined as a trust, and a trust is declared to be a conspiracy in restraint of trade and business, and unlawful. Evidently the words "trade and business" are intended as a generic term to embrace all the transactions and practices set forth in the preceding ' section, and properly include the regulation of insurance contracts in restraint of competition.

At the same session there was passed "An act to prevent combinations between fire insurance companies and providing penalties therefor," commonly known as the "Haller act." Laws 1897, ch. 81. This act prohibited combinations to fix rates and commissions by fire insurance companies, but made no attempt to prevent such combinations to prevent competition in other classes of insurance.

Eight years later the Junkin act was passed. Laws 1905, ch. 162. It was a further development of the legislative campaign against the evils of combinations to enhance prices and to prevent competition in all lines of trade and business. The legislature necessarily must have had in mind the existing statutes on the general subject and the prior definitions of the terms used therein. Our views on this subject are plainly expressed in the opinion in *State v. Omaha Elevator Co.*, 75 Neb. 637, as follows: "We think it clear that the whole series of statutes directed against combinations and monopolies should be considered as parts of a connected system, and that no one act should be singled out for construction and be considered apart from the general trend of legislation upon the subject. * * * It is apparent that the Junkin act of

1905 in a large measure covers the same subject matter as the Gondring act of 1897. Its provisions in some respects are more specific. It is preventive in its nature as well as remedial, and it is apparent that it was intended by the legislature to cover the same subject matter and to furnish like and additional remedies to those provided by the Gondring act. It evidently was intended to be a substitute for that act, in so far as the preventive and remedial features are concerned. It fails, however, to specifically define or construe or determine what a 'trust' is. We think that recourse may be had, however, to the definition of 'trust' in the first section of the Gondring act to throw light upon what the legislature meant when it prohibited 'every combination in the form of trust' in the Junkin act. The extent of the repeal of the former act is measured by the extent to which it covers the subject matter, and if any portion of the former act is not inconsistent with or repugnant to the latter, and it can fairly be said that it was within the contemplation of the legislature when the later statute was enacted, it will be upheld and construed as forming a part of the later enactment." The legislature in the Junkin act did not again define the words "trust" or "conspiracies against trade and business," for this it had already done in the Gondring act. The title of the new act, so far as pertinent here, is "An act to protect trade and commerce against unlawful restraints and monopolies," etc. By section 1 it is declared: "That every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce, within this state, is hereby declared to be illegal."

Since a combination to prevent competition in insurance had already been defined as a trust, it seems evident that the protection of trade from such trust or unlawful combination was within the intent and purpose of the legislature. We are of opinion that the prior legislative definitions made in the Gondring act, to which our attention was not directed upon the argument at the former hearing, when considered in connection with the Junkin

act, bring the case within the rule of *In re Pinkney, supra, Beechley v. Mulville*, 102 Ia. 602, and *Queen Ins. Co. v. State*, 86 Tex. 250, cited in the former opinion. Furthermore, we are satisfied that by the passage of the Junkin act it was not the intention of the legislature to narrow the field of the protection given by the Gondring act, and that in both acts the same purpose is manifested, namely, the protection of "trade and business" or "trade and commerce" from unlawful restraints. As used by the legislature in these acts, we think the terms are practically synonymous. In fact, the latter term is, if anything, broader than the former, for, while the terms "trade and business" may have to some extent a somewhat local significance, "trade and commerce" connotes the widest latitude of commercial transactions, interstate or even international in extent. We conclude, therefore, that by prior legislative definition a combination to prevent competition in insurance may properly be a subject for legislation under the title of the Junkin act. The conclusion must follow that the purpose of section 4 in requiring the statements and undertakings therein mentioned to be filed in the office of the attorney general is to furnish that officer with information necessary to aid him in his duty to enforce the law, and that the subject matter of that section falls properly within the scope of the title.

We are not convinced by defendant's argument that by the passage of the Haller act the legislature evidenced the thought that an insurance combination was a separate subject, and therefore not included in the Gondring act. Perhaps this may be true as to fire insurance, but it cannot be so as to other classes of insurance, for they are specifically mentioned in the latter act.

We are not impressed with the contention that section 4 is unconstitutional because it applies to a subject different from the general subject matter of the act. It merely provides a detail the legislature believed to be necessary to carry out the purpose of the law, and, as said before, is clearly within the general scope of the title.

So, also, as to the claim that the act is amendatory of the act of 1885 (laws 1885, ch. 23, Ann. St. 1911, sec. 6711), setting forth the requirements to be met by foreign surety companies as a condition of doing business in this state. True it adds another duty, but it leaves the former act unaffected. The legislature may impose additional conditions if it so desire, but such imposition would not be amendatory, unless the former requirements were changed or affected.

Neither can we agree to the assertion that the permission granted by former acts to such corporations to do business in the state creates a contract which is violated by this act. A license or permission is not a contract; but, even if it were, the state under its police powers would still have the right to regulate the business and to require such reports and statements as seemed necessary to protect its people from unlawful exactions. *State v. Standard Oil Co.*, 61 Neb. 28.

The contention that the state is estopped by reason of the failure of its officers to call for the report for several years, and that thereby the right of the state in this regard has been waived, does not present much difficulty. There is nothing in the record on which this argument can be based. Moreover, no officer is empowered by nonaction to repeal mandatory provisions of a statute. It is not infrequent that laws imposing fines and penalties are not enforced, but the penalties are not abrogated thereby nor the laws repealed. If the failure to enforce laws in this country should have the effect of abrogating or repealing them, the bulky and ponderous volumes of both state and federal statutes might easily shrink to pocket size.

The object of this action and the prayer of the petition is that the defendant be enjoined "from further transacting or carrying on its business within the state of Nebraska, and for such other and further relief as equity and justice may require." Defendant contends that the penalties imposed by the act are not imposed for the failure

to file the statements and undertakings required by sections 4 and 5 of the act, but are only imposed for the violation of its provisions with respect to contracts in restraint of competition in buying and selling merchandise and commodities, or in restraint of trade and commerce in the general acceptation of these words. Section 4 (laws 1905, ch. 162) provides, in substance, that no corporation of the class described in the section "shall engage in business within this state, or continue to carry on such business, unless it shall comply with the following conditions:" (Then follows an enumeration of the reports required.) Section 5 provides that the attorney general may at any time require any statement he may think fit in regard to the conduct of the business of such corporation. · Section 6 is still broader in its provisions, and makes penal a violation of its terms by "every corporation * * * engaged in business within this state." Section 8 provides, in substance, that all the books of record and papers of every corporation, joint stock company or other association engaged in business within this state shall be subject to inspection by the attorney general and shall make such further returns as shall be by him prescribed. Sections 11 and 16 provide, in substance, that a defaulting corporation may be enjoined against further engaging in such business in this state by a suit brought by the attorney general in behalf of the state, and "that the several courts of record of this state having equity jurisdiction are hereby vested with jurisdiction to prevent and restrain all violations of this act, and especially" the giving or receiving of rebates or concessions.

From a consideration of these sections and of the act as a whole, it is clear that its administration and enforcement is committed to the attorney general and the governor of the state. By section 22 it is expressly provided: "It is hereby made the duty of the attorney general and the county attorneys of the state under direction of the attorney general to institute and prosecute such proceedings as may be necessary to carry into effect all of the pro-

visions of this act." Since the relief prayed for in this action is that a foreign corporation which fails, neglects, and refuses to obey the law as to filing reports be enjoined from continuing to do business in this state, while so violating the provisions of the act, we are of opinion that the petition states a cause of action.

Under the provisions of section 11, the court may enter a modified or conditional decree or a decree to take effect at a future time as justice shall require. It is not obligatory to render a decree in the first instance absolutely barring the defendant from doing business in the state. It is within the power of the court to enter a conditional decree providing that, if the reports and undertakings required by the statute are not filed within a specified time, a final decree may be entered as prayed. Holding these views, the former judgment of the court must be set aside, the judgment of the district court reversed, and the cause remanded for further proceedings.

REVERSED.

REESE, C. J., not sitting.