(No. 12192.—Reversed and remanded.)
J. HACKEN *vs.* HARRIS ISENBERG *et al.* Appellees.—(CHRISTINA ROLLBERG, Appellant.)

*Opinion filed June 18, 1919—Rehearing denied October 8, 1919.*

1. MECHANICS' LIENS—*meaning of words "the owner," in section 30 of Mechanic's Lien act.* The words "the owner," in section 30 of the Mechanic's Lien act, giving a right to file a bill for general settlement, have the same meaning as they do in section 1 of the act, and have reference to anyone having an estate, right or interest in property, either in fee, for life or for years, or any other interest against which a lien is sought to be enforced.

2. SAME—*who must be made parties to a bill for general settlement.* A party filing a bill for a general settlement under section 30 of the Mechanic's Lien act must make parties to his bill all persons claiming liens against the premises and all persons interested in the premises, including other owners, if any, whose interests may be subject to such liens or affected thereby.

3. SAME—*who may file intervening petition or cross-bill to bill for general settlement.* Any of the parties claiming liens and made parties to a bill for a general settlement under section 30 of the Mechanic's Lien act may file an intervening petition or an answer in the nature thereof, or a cross-bill, and may make parties defendant thereto any owners who were not made parties to the original bill, for the purpose of determining whether the interests of such owners are subject to said liens.

4. SAME—*burden is on lienors to establish right to lien.* The burden is upon the lienors to prove every fact required by the Mechanic's Lien act to establish their right to a lien on the premises, either against the interest of the lessee or against the interest of the owner of the fee.

5. SAME—*when owner submits to jurisdiction of court.* Where a bill is filed by a lessee for a general settlement under section 30 of the Mechanic's Lien act and the court has properly permitted parties claiming liens to file intervening petitions and a cross-bill, a party who is made a defendant to the petitions and cross-bill as an interested owner, and who was not a party to the original bill, submits to the jurisdiction of the court by filing pleas and answers to the petitions and cross-bill, and permission of the court to make said owner a defendant is given by trying the issues and entering the decree.

6. SAME—*when liens are not barred by Statute of Limitations.* Where a new party is introduced into a suit by amendment, the suit is brought, as to such party, from the date of the amendment; but where the owner of premises is not brought into a suit by the lessee, under section 30 of the Mechanic's Lien act, until she has been made a defendant to intervening petitions and a cross-bill by parties claiming liens, the liens are not barred by the Statute of Limitations though said owner did not answer the petitions or cross-bill until after the period of limitation had expired.

7. SAME—*meaning of word "repair" when used in lease.* In a provision in a lease that the lessee shall keep the premises in good repair, the word "repair" is used in its ordinary sense and means restoration after decay, injury or partial destruction, and does not include alterations or additions that the lessee may choose to make.

8. SAME—*interest of lessor in building cannot be subjected to lien for unauthorized alterations by lessee.* The interest of the lessor and owner of premises cannot be subjected to a mechanic's lien for the subsequent making by the lessee of alterations and additions to the building thereon, in the absence of any showing that the lessor authorized or consented to the same, where the lease expressly requires consent in writing by the lessor to the making of alterations or additions.

9. SAME—*object of sections 89 and 90 of Torrens act, requiring filing of notice of lien.* Sections 89 and 90 of the Torrens law, requiring the filing of a claim for a mechanic's lien in the registrar's office, were not intended to enable any record owner to defeat a lien given by the Lien act, but were enacted in the interest of parties who might become purchasers or otherwise interested in the lands of the owner of the registered title after mechanics' liens had attached.

10. SAME—*rule as to filing claim for mechanic's lien where Torrens law is in force.* In counties where the Torrens system of registering titles is in force, a claim for a mechanic's lien, as against subsequent purchasers and creditors, must be filed within the four

months' period provided for in the Mechanic's Lien law, in the office of the registrar of titles, and a memorial of the claim be entered in the register of titles, but as against the owner of the premises the claim may be filed at any time within two years after the completion of the contract.

11. SAME—*provisions of the Mechanic's Lien act of 1895, re-enacted in 1903, have remained in force.* While the Mechanic's Lien act of 1903 repealed the act of 1895, all provisions of the act of 1895 that were re-enacted in the act of 1903 are to be construed as remaining in force and not as being a new enactment.

12. REGISTRATION OF TITLE—*object of Torrens system of registration.* The object of the Torrens system is to create an independent system of registration of land titles by requiring that all instruments intended for the purpose of passing or affecting any title to real estate shall be filed and registered in that department and no other, in order that subsequent purchasers or parties dealing with the title may have notice of the interest registered.

13. STATUTES—*former act will not be repealed by later statute on same subject if both acts can be given effect.* Two acts covering the same subject should be construed, if possible, so that each shall have due effect, and in such case the later act, or the act varying in some minor degree the requirements necessary to obtain the relief given by the statute, instead of being construed to repeal the former or other act should be held to be an amendment or modification.

APPEAL from the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

MACLAY HOYNE, State's Attorney, CULVER, ANDREWS, KING & STITT, JOHN W. BECKWITH, and CHARLES T. FARSON, for appellant.

HYMAN SOBOROFF, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On July 10, 1912, Joseph Hacken entered into a lease in writing with Henry A. Rollberg for a two-story frame building known as No. 1141 South Halsted street, Chicago,

for a period of ten years from the first day of September, 1912. The property was owned at that time by Henry A. Rollberg and Christina Rollberg, his wife, as joint tenants. Hacken entered into a contract in writing August 14, 1912, with Harris Isenberg, Benjamin Isenberg and Morris Kaplan, contractors of the city of Chicago, for the remodeling of said building according to certain plans, specifications and drawings made by R. D. Brown, architect and superintendent, the alterations to cost $4025. The contractors let portions of the work to different sub-contractors, who furnished work and material for the premises. Hacken paid to the original contractors on the work of remodeling $1600. A number of sub-contractors and material-men served notices of liens on the Rollbergs and were threatening suit. On January 3, 1913, Hacken filed in the circuit court of Cook county, under section 30 of the Mechanic's Lien law, a bill for a general settlement and to bring all of the lienors into court to have their claims adjusted in one suit and to enjoin and restrain them from prosecuting separate suits. The Rollbergs were not made parties to this bill. A number of sub-contractors and the original contractors were made parties defendant to the bill. On March 22, 1913, leave was given to the sub-contractors, some of whom were not made defendants to the original bill, to file answers in the nature of intervening petitions. The Rollbergs were made parties defendant to these intervening petitions. Thereafter the original contractors filed an answer in the nature of an intervening petition, and in May, 1914, a cross-bill, and joined the Rollbergs as parties defendant. No summons was issued to the Rollbergs except on the intervening petition of J. A. Thomas, a sub-contractor whose claim was afterwards disallowed by the court. The Rollbergs filed their appearance March 5, 1914, and on April 2, 1914, they filed their joint plea to all petitions and claims, setting up as a defense that no notice or claim for lien was filed with the recorder by any of the parties claiming liens,

as required by the provisions of the Torrens act; that their property was registered under the Torrens act, and by reason thereof no such liens could be maintained by the subcontractors. A reference to a master in chancery was taken on the issues formed, under a stipulation that the Rollbergs should have accorded to them all their rights and defenses to the same extent as if they had been pleaded by proper answers filed. After the testimony was taken Henry A. Rollberg died. His death was suggested on the record, and the suit proceeded against Christina Rollberg in her own right and as successor to the title of her deceased husband. She then filed answers to all intervening petitions, including the cross-bill of the contractors, setting up all her defenses. The court held and decreed that the contractors were entitled to a lien on the premises, including her interest therein, for $2425 and $500 interest, and that the sub-contractors, M. Schulrey, H. Kapper, the I. Lurya Lumber Company and Sam Kaplin, were also entitled to liens in equal degree, aggregating $1266.71, and further that the claim of the original contractors should be decreased to the extent of any and all payments that might be made on the amounts decreed to the sub-contractors, and that said premises be sold to·pay said liens and costs unless paid by Hacken or Mrs. Rollberg. On appeal to the Appellate Court for the First District the decree was affirmed. She has prosecuted this appeal on a certificate of importance by the Appellate Court.

The first contention of the appellant is that the judgment of the Appellate Court and the circuit court's decree should be reversed for the reason that Hacken, as lessee, had no right to maintain such a proceeding under section 30 of the Mechanic's Lien law, as that statute confers such right only upon the owner of the property or someone claiming a lien thereon. By the provisions of section 1 of the Mechanic's Lien act the contractor's lien extends to an estate in fee, for life, for years or any other estate, or any

288—38

right of redemption or other interest which such owner may have in the lot or tract of land on which the improvement is made. By section 21 of the act the sub-contractor's lien extends to the same character of an estate, right or interest. An owner, within the meaning of said section 1, is one who has had improved any tract or lot of land in which he has such an estate, right or interest defined and set forth in section 1. (*Paulsen* v. *Manske,* 126 Ill. 72; *Sorg* v. *Crandall,* 233 id. 79.) The words "the owner" in section 30 have the same meaning as they do in section 1, and have reference to anyone having such an estate, right or interest as aforesaid, whether his estate, right or interest be one in fee, for life, for years or for any other interest. That section expressly gives the owner, or any person having such a lien, the right to file a bill or petition in the proper court for a settlement when there are several sub-contractors' liens, or claims for such liens, against the premises, if he shall fear that there is not a sufficient amount due the contractor to pay all such liens. The contractor and all persons having liens upon the premises, and all persons who are interested in the premises, shall be made parties to such a bill. That section further provides that the amounts due all lienors shall be ascertained and the rights of all parties declared, and that the premises may be sold as in other cases under the act, and that all claims shall be prosecuted under like requirements as are directed in section 11 of the act. Hacken was an owner of an estate for years and had the right to file his bill under section 30, and he was required to make parties to his bill all persons of every character claiming liens against the premises, and all persons interested in the premises, including other owners, if any, whose interests might be subject to such liens or affected thereby. Any of the parties claiming liens and made parties to his bill had a right to file intervening petitions or answers in the nature thereof, or a cross-bill, if they chose to do so, and make the Rollbergs parties defend-

ant thereto and have the question determined as to whether or not the interests of the Rollbergs are subject to their liens, and the court properly so ruled. The burden was upon the lienors to prove every fact required by the statute to establish their right to a lien on the premises, either against the interest of Hacken, the lessee, or against the interest of the appellant as owner of the fee. *Kankakee Coal Co.* v. *Crane Bros. Manf. Co.* 128 Ill. 627.

The claim of appellant that the court had no jurisdiction of her person because none of the lienors had express permission to make her a party defendant to their petition or to the cross-bill is not tenable. The court expressly gave all of the parties leave to file their petitions and cross-bills, and she was made a party defendant thereto and filed both pleas and answers to said petition and cross-bill. She thereby submitted to the jurisdiction of the court, and she would be bound by whatever decree the court properly entered against her. If assent of the court was necessary to make her a party defendant, as aforesaid, the court gave its assent by trying the issues and entering its decree. There is no ground, therefore, for the further claim that the liens are barred by the Statute of Limitations. The filing of a petition is the institution of the suit, and when a new party is made by amendment the suit is brought, as to him or her, from the date of the amendment. (*Bennitt* v. *Wilmington Star Mining Co.* 119 Ill. 9.) The fact that appellant did not answer the petition or the cross-bill until after the limitation had expired is of no significance in this case.

The Mechanic's Lien act only gives to contractors and sub-contractors a lien against an owner or his interest in the land or lot improved when such improvement is made by a contract or contracts, expressed or implied, or partly expressed or implied, with such owner, or with one whom such owner has authorized or knowingly permitted to contract with the contractor for the improvement. The defense or claim of appellant that she did not make any such

contract with the contractor and did not authorize or knowingly permit Hacken to contract with the contractors for the improvement in question must be sustained. The evidence mainly relied upon by appellees for their claim that the Rollbergs authorized or knowingly permitted the contract for the improvement are two separate printed clauses in the lease to Hacken, found in the second and fourth paragraphs of the lease, respectively. The provision in the second clause reads: "That the said party of the second part [Hacken] will keep said premises in good repair, and will immediately replace all broken globes, glass or fixtures with those of the same size and quality as that broken." The fourth clause provides that Hacken will not permit any alterations of or upon any part of said demised premises except by written consent of the lessor, and that *"all alterations and additions to said premises shall remain for the benefit of the lessor,* unless otherwise provided in said consent." The italicized words of the quoted portion of this clause as printed in the lease are underscored with a red ink line drawn by pen. The plain meaning of these two provisions of the lease is that Hacken shall keep said premises in good repair, and the word "repair" has its ordinary meaning in this clause as given in Funk & Wagnall's New Standard Dictionary: Restoration after decay; waste; injury or partial destruction; supply of loss; reparation. It does not include, in this lease, alterations or additions that the lessee may choose to make. Alterations and additions are provided for in the fourth clause of the lease, as aforesaid, and the express provisions of the lease forbid the lessee from making any alterations whatever except by written consent of the lessor. No such written consent was ever given by the lessor, and there is no contention that he did. The quoted provision that all alterations and additions to said premises shall remain for the benefit of the lessor unless otherwise provided in said consent is a provision merely as to the ownership in case such improvements are made.

The fact that the words are underscored with red ink does not in the least change their meaning but merely emphasizes or calls attention specially to such provisions. We have read all the provisions of the contract of Hacken with the contractors, and the contract clearly provides for the making of alterations and additions, and not for repairs, simply. The lease, therefore, in our judgment, is positive and express evidence that no such alterations and additions can be made by the lessee until he is authorized to do so by a further writing.

The other evidence in the record discloses that Henry A. Rollberg was a paralytic and was never at the building after the lease was made, and there is no evidence in the record that appellant was ever there or had in any way consented to the making of such improvements or knew anything about there being any alterations or additions contracted for or made. It does appear that Edward Rollberg, a son of the Rollbergs and who was not living with them, told Hacken, at the time negotiations were in progress for the lease, that there was an adequate sewer or catch-basin on the premises. Afterwards, when it was discovered that there was no such sewer or catch-basin, Edward inquired about the cost of building a sewer or catch-basin and authorized the work to be done and agreed to pay for it when the sewer or catch-basin was completed, and he carried out his agreement. He testifies positively that neither his father nor mother authorized him to represent them and that he never discussed with either of them the work that was being done there, and denied that he gave any directions about any of the alterations or any changes in the plan. There is no contradiction of his testimony except in one particular, in which it was shown by another witness that he directed a certain eight-inch beam used in connection with the alterations, to be changed to a twelve-inch beam. The interest of the lessor cannot be subjected to a

mechanic's lien for the subsequent construction of alterations and additions to the building, in the absence of any showing that he or she authorized or consented to the same. *Sorg* v. *Crandall, supra.*

Section 89 of the Torrens act provides: "In all cases where, by any law in relation to the liens of mechanics or others, any claim or notice is authorized to be filed in any court or office, the same, when it relates to registered land or any interest therein, may be filed in the registrar's office, and being so filed, a memorial thereof shall be entered by the registrar, as in the case of other charges, and proceedings to enforce the lien may be had, as provided in the act, creating the same. Until it is so filed and registered, no such lien shall be deemed to have been created." Section 90 provides: "No statutory or other lien shall be deemed to affect the title to registered land until after a memorial thereof is entered upon the register, as herein provided." (Hurd's Stat. 1917, p. 682.)

Section 1 of the Mechanic's Lien act provides that the lien of the contractor against the owner and his premises shall attach as of the date of the contract. Section 7 provides that no contractor shall be allowed to enforce such lien against any other creditor, incumbrancer or purchaser unless within four months after completion, or, if extra or additional work is done or material is delivered therefor, within four months after the completion of such extra or additional work or the final delivery of such extra or additional material, he shall either bring suit to enforce his lien therefor or shall file with the clerk of the circuit court in the county in which the building, erection or other improvement to be charged with the lien is situated, a claim for lien, verified by affidavit of himself or his agent or employee. Such claim for lien may be filed at any time after the contract is made and within two years after the completion of said contract or the completion of any extra work or the furnishing of any extra material thereunder, and

as to such owner may be amended at any time before the final decree.

Appellant contends that as said two sections of the Torrens act were not complied with, no liens were ever created in favor of the lienors. Appellees claim that all the provisions of the Mechanic's Lien act are to be literally enforced, and that any provisions of the Torrens act repugnant thereto must be held repealed by implication, as the Lien act was enacted in 1903, after the Torrens act was enacted, in 1897.

For the purposes of the decision of the points now involved it will be considered as a fact that appellees never complied with said two sections of the Torrens act by filing their claims or notice of their liens in the registrar's office. There was filed May 19, 1914, with the registrar, and by him duly entered in the register of titles, a notice of *lis pendens*, as provided by section 84 of the Torrens act. The Torrens act was approved and in force May 1, 1897, but the provisions thereof do not apply to land in any county until adopted by a vote of the people of the county. All recorders and *ex-officio* recorders of deeds in the several counties in the State shall be registrars of title, and their deputies deputy registrars, when the act is adopted. The object of the Torrens system was to create an independent system of registration of land titles, and that all instruments intended for the purpose of passing or affecting any title to real estate should be filed and registered in that department and no other. (*McMullen & Co.* v. *Croft*, 96 Wash. 275.) It was held in that case that the obvious purpose of the Torrens system is to create a presumption that the certificate of registration in the registrar's office at all times speaks the last word as to the title, thus doing away with secret liens and hidden equities, and that this is accomplished by the simple plan of making the act of conveyance and the fact of notice by record simultaneous in performance and effect. By section 54 of the Illinois Tor-

rens act a deed, mortgage, lease or other instrument purporting to convey, charge or otherwise deal with registered land, or any estate or interest therein, other than a will or a five-year lease of land in possession of the lessee, shall take effect only by way of contract between the parties thereto and as authority to the registrar to register the same when compliance has been made with the terms of the act. The main object of our statute in thus limiting the effect of a deed or other instrument affecting real estate is to compel the grantee or party interested in the title of the record owner to register his title or interest in the registrar's office, in order that subsequent purchasers or parties dealing with the title may have notice of such title or interest. A careful examination of the whole act will clearly disclose that sections 89 and 90 of our Torrens act, when considered with the provisions of the Mechanic's Lien act, were particularly enacted in the interest of parties who might become purchasers or otherwise interested in the land of the owner of the registered title after mechanics' liens had attached. They were not intended to enable any record owner to defeat a lien given by the Lien act.

Our Mechanic's Lien law now in force was passed in 1903 and is a complete revision of the Mechanic's Lien law as it existed in 1895. By section 40 thereof the act of 1895, and all other acts and parts of acts inconsistent with the act of 1903, are repealed, saving any rights existing or actions pending at the time the act took effect. While the act of 1903 repealed the act of 1895, still all provisions of the act of 1895 that were re-enacted in the act of 1903 are to be construed as still in force and not as a new enactment. (Hurd's Stat. 1917, chap. 131, sec. 2.) While all such sections were repealed, they were re-enacted at the same moment that they were repealed and hence did not at any time cease to be the law. Section 7 of the act of 1903 is almost literally a re-enactment of section 7 of the law of 1895, the principal difference between the two enactments being that

the contractor under the act of 1895 must file his claim for lien four months after the last payment on his contract shall have become due and payable, and under the act of 1903 the same is to be filed within four months after the completion of the work or after additional work is completed or the material therefor is delivered. Sections 89 and 90 of the Torrens act in express terms recognize the Mechanic's Lien act, and there is no section in the Torrens act that was enacted with a view to repeal any section of the Mechanic's Lien act of 1895. The requirements of section 89 of the Torrens act are, in substance, that the claim or notice for a lien mentioned in section 7 of the Mechanic's Lien act shall be filed in the registrar's office instead of in the circuit clerk's office, with the further provision that until so filed and registered no such lien shall be deemed to have been created. The meaning of this last provision is, that the contractor's lien or right shall only have the force and effect of a contract until notice of the contractor's claim is filed and registered as aforesaid. When filed within two years the lien attaches as to the owner as of date of the contract. As our Torrens law was enacted after the Mechanic's Lien act of 1895 and in recognition of its provisions, we must also assume that the legislature intended both acts to be interpreted with reference to each other, and that such a construction should be put upon them that both acts would be effective, if possible, and that neither of them was intended to be repugnant to the other. Therefore, by properly applying the rules of construction in such cases, we are to understand that under section 89 of the Torrens act and section 7 of the Lien act the contractor had four months under the act of 1895, as therein provided, within which to file his notice of claim as against subsequent purchasers, creditors, etc., of the owner, and that he now has the four months as provided in the act of 1903 in which to file such claim as against the same parties, and that he may file it at any time after the contract is made, and as to

the owner at any time within two years after the completion of the contract or extra work, etc. It is equally clear that in every county where the Torrens act is in force such claim should be filed with the registrar of titles and not with the circuit clerk and entered in the register of titles in the registrar's office. This requirement is in reality the only change that the Torrens act makes in any of the provisions of the Mechanic's Lien act, except the further provision in section 84 which requires a certificate of the pendency of a suit to be filed with the registrar as *lis pendens.* It was contemplated by the Torrens act that the circuit clerk, who is in many of our counties *ex-officio* recorder, might also become the registrar under that act. When both of said acts apply and the interests of subsequent purchasers, creditors, etc., are involved, the proper interpretation of the Lien law is that said notice of claim or of lien shall be filed with the proper recorder of the title of the land to be affected,—*i. e.,* with the registrar,—and that a memorial thereof shall be by him entered in the register of titles in the Torrens department. When so filed and entered within the four months, as provided in the Lien act, the lien attaches as against subsequent purchasers, creditors, etc., as of date of the contract with the contractor, but until so filed and entered the claim of the contractor is merely, in effect, that of a contract with the owner. Either of the interpretations contended for by the parties to this suit would result in one of said acts destroying the effect of some distinctive provision of the other act,—*i. e.,* in a repeal by implication, which is not favored by the law and the decisions of this court. Where two acts which apparently cover the same subject have been passed by the legislature, they must be construed, if possible, so that each shall have due effect. In such case the later act, or the act varying in some minor degree the procedure or requirements necessary to obtain the relief given by the statutes, instead of being construed to be a repeal of the former or other act, should be held

to be an amendment or modification of it. *Village of Ridgway* v. *Gallatin County,* 181 Ill. 521.

It follows from what has already been said that appellant's defense under the Torrens law could not be sustained, as all the petitions for liens were filed within the two years mentioned in section 7 of the Lien act. We have passed upon this question only because of the fact that public interests were involved in the questions raised under the Torrens act, and for which reason this court permitted the State's attorney of Cook county and counsel for the Torrens Land Title Registration League to file briefs and arguments in support of the Torrens act. The rights of subsequent purchasers, creditors, etc., do not arise in this case, as there are no such parties to it.

For the reasons aforesaid the judgment of the Appellate Court and the decree of the circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*