(No. 14040.—Decree affirmed.)

In re Application of John Bickel to Register Title.—THE KEMLER LUMBER COMPANY et al. Appellants, vs. ADOLPH NAUMANN et al. Appellees.

Opinion filed February 22, 1922.

1. MECHANICS' LIENS—when memorial of mechanic's lien may be removed by petition under the Torrens act. If the claim for a mechanic's lien is not filed within four months after the completion of the work or the last delivery of materials, as required by section 7 of the Mechanic's Lien act, subsequent purchasers for value will be entitled to have the memorial of the lien removed from the register of titles under the Torrens act.

2. SAME—lien attaches as of date of contract if claim is filed in required time. Where a claim for a mechanic's lien is filed within four months, as provided in section 7 of the Mechanic's Lien act, the lien attaches, as against subsequent purchasers, as of the date of the contract with the contractor, but the lien ceases to exist if suit is not filed within two years, as required by section 9.

3. REGISTRATION OF TITLE—object of the Torrens act. The general purpose of the Torrens system of registration of land titles is to provide a place where all instruments affecting the title to the registered land may be filed, so that an intending purchaser may ascertain by an inspection of the register who may convey to him the title.

4. SAME—section 84 of Torrens act is not invalid because it, in effect, amends Mechanic's Lien act. Section 84 of the Torrens act, requiring a party who seeks to enforce a mechanic's lien on registered land to file notice of his suit with the registrar of titles before the proceeding shall be deemed lis pendens or notice to any person dealing with the land, is complete in itself and is not invalid because it, in effect, amends the Mechanic's Lien act.

5. SAME—when memorial of mechanic's lien may be canceled because notice of suit to foreclose lien was not filed with registrar. One who seeks to foreclose a mechanic's lien on registered land must file with the registrar of titles notice of his suit, as required by section 84 of the Torrens act, within the two-year period allowed for enforcing the lien, or subsequent purchasers for value may, by petition, have the memorial of the lien canceled and removed from the register although notice of the claim for the lien was filed in time.

DUNCAN, J., dissenting.

Appeal from the Circuit Court of Cook county; the Hon. George F. Rush, Judge, presiding.

Gustav E. Beerly, and Charles F. Glaeser, (Ellis S. Chesbrough, of counsel,) for appellants.

William G. Wise, for appellees.

Per Curiam: Two petitions were filed in case No. 1818 L. R. in the circuit court of Cook county under the Torrens act to remove memorials from the register. One of these petitions was filed by Adolph Naumann against Joseph F. Haas, the Kemler Lumber Company and P. Robert Johnson to remove memorials of mechanics' liens filed by the lumber company and Johnson covering lots 12, 13, 14 and 15, also known, respectively, as Nos. 2532, 2534, 2538 and 2540 Blaine place, in Chicago. The other petition was filed by Charles J. and Mary J. Deckert against Joseph F. Haas and the Kemler Lumber Company to remove a memorial of a mechanic's lien by the lumber company and involves lot 11, also known as No. 2530 Blaine place, in Chicago. The defendants to the petitions filed answers and the issues were referred to the examiner of titles, who made his report recommending that the prayer of the petitions be granted and that the memorials of the liens claimed by the defendants, the Kemler Lumber Company and Johnson, be canceled and removed from the register. Objections were filed to the report, which were overruled and exceptions taken by the defendants to both petitions. The circuit court overruled the exceptions and a decree was entered in each petition as prayed, and the defendants have prosecuted this appeal.

The facts appearing in the record are the following: Lots 38 and 39 in Bowman's Second subdivision of the east half of the southeast quarter of section 12, township 40, north, range 13, east of the third principal meridian, were

duly registered in the office of the registrar of titles in Cook county in the name of John Bickel, free and clear of all incumbrances, and a certificate of title was issued to Bickel therefor. Thereafter a part of said subdivision was further subdivided into lots, the lots in question being a part of the subdivision lotted, and Mathias Huberty and Frank Loheinrich became registered owners of all five of said lots. In the summer of 1915 Huberty and Loheinrich, who then held the registered title to the five lots, undertook the erection of a two-story flat-building on each of the lots. They obtained a loan of $4000 on each lot from Edward G. Pauling to erect the buildings, and for said sums gave a trust deed which was a first lien on the lots. They also procured a further loan of $2000 on each lot, for which they gave a second mortgage to Emil Seeman as trustee. In the early part of 1916 Huberty and Loheinrich failed and were adjudged bankrupts in the United States district court for the northern district of Illinois. The property of the bankrupts was sold by the trustee in bankruptcy, and William G. Wise purchased the five lots and received from the trustee in bankruptcy a deed thereto by order of said court. He filed the deed in the office of the registrar of titles and a certificate of title was issued to him November 14, 1916. The claim of appellant P. Robert Johnson for mechanic's liens against Huberty and Loheinrich for $225 on each of lots 12, 13, 14 and 15 was filed with the registrar of titles July 24, 1916. The claim of appellant the Kemler Lumber Company for mechanic's liens for labor and materials against Huberty and Loheinrich for $2239.94, giving notice of liens on all five lots, was filed January 29, 1917, in the registrar's office. At the time Huberty and Loheinrich became bankrupts the buildings on said lots were unfinished, and Pauling and Seeman furnished the money necessary to complete the buildings in addition to the loans already made by them, and their trust deeds or mortgages are registered in the registrar's office as liens.

On December 19, 1917, almost a year after it had filed notice of its liens in the Torrens office, the Kemler Lumber Company filed a bill in the superior court of Cook county to foreclose its mechanic's liens against said five lots, making William G. Wise, Edward G. Pauling and Emil H. Seeman parties defendant. Thereafter P. Robert Johnson filed his intervening petition in said lien suit to foreclose his liens on lots 12, 13, 14 and 15. It appears that these suits for liens are still pending and undetermined in the superior court, and that no notice of *lis pendens* of that proceeding in the superior court has at any time been filed in the office of the registrar of titles of Cook county, as provided by section 84 of the Torrens act. It was also shown that notice of the liens of the Kemler Lumber Company was filed with the registrar more than four months after the last material had been delivered by it and payment for its claims had become due. Johnson filed his claim for mechanic's liens with the registrar within the time required by section 7 of the Mechanic's Lien act, and this is not questioned.

On December 23, 1919, William G. Wise and wife conveyed lots 12, 13, 14 and 15 to appellee Adolph Naumann, and the title thereto was registered in Naumann and a registrar's certificate of title was issued to him. Naumann paid Wise $4800 for his interest in the lots, and the deed to Naumann was made subject to the trust deed to Pauling and Seeman. On October 14, 1919, Wise conveyed lot 11 to appellees Charles J. and Mary J. Deckert for $3700, subject to said trust deeds, and the title thereto was registered and a registrar's certificate was issued to the Deckerts. Wise paid the trustee in bankruptcy $50 for lot 11, $25 each for lots 12 and 13, and $10 each for lots 14 and 15. Said lots are each of the value of about $1000 in addition to the buildings thereon, which are each worth about $6500. Wise had been for ten years the attorney for Pauling and Seeman and filed their appearance in the superior court in the mechanic's lien suit. He testified that they had noth-

ing to do with his purchase at the trustee in bankruptcy's sale, and that his purchase price of the lots was not furnished by them but that part of the purchase price paid him by the Deckerts and Naumann was paid to Pauling and Seeman on their liens. He had no specific agreement with Pauling and Seeman about being reimbursed for the funds he had expended in the purchase of the lots. He knew of the lien claims of Johnson before he purchased the lots, but did not know about the claim of the Kemler Lumber Company until about the time it filed its bill in the superior court. He discussed the state of the title on the certificate with Deckert and Naumann's attorney but did not disclose to them the pendency of the bill in the superior court, and they made no inquiry of him concerning that suit.

The decision of the circuit court that appellees were entitled to have the memorials of the mechanic's liens of Johnson and the Kemler Lumber Company canceled and removed from the register in the registrar's office is based, first, upon the fact that the Kemler Lumber Company did not have the memorials of its liens for materials registered or filed within four months after the last delivery of materials or within four months after the last payment was due, as required by section 7 of the Mechanic's Lien act; and second, because the lumber company and Johnson did not file in the office of the registrar of titles any notice of the foreclosure suit in the superior court to enforce the liens, as required by the provisions of section 84 of the Torrens act. It is the claim of appellees that the proof of either one of the foregoing facts,—that the claims for liens were not filed in the registrar's office in the time provided for in the Mechanic's Lien act and that no notice of the suit to foreclose the liens had at any time been filed with the registrar,—was a sufficient ground or reason for the removal of the memorials. The facts are undisputed, and if each set of facts furnishes a sufficient ground for the cancellation and removal of the memorials

the court's decree must be sustained *in toto,* both as to the liens of the lumber company and the liens of Johnson.

Section 7 of the Mechanic's Lien act provides, in substance, that no contractor shall be allowed to enforce his lien against or to the prejudice of any other creditor or incumbrancer or purchaser, unless within four months after completion of the work, or if extra or additional work is done or material is delivered, within four months after completion of such extra or additional work or final delivery of such extra or additional material, he shall either bring suit to enforce his lien or file with the clerk of the circuit court a statement of claim for his lien. In *Hacken* v. *Isenberg,* 288 Ill. 589, it was decided by this court that in counties where the Torrens system of registering titles is in force, a claim for mechanic's lien, as against other purchasers and creditors, must be filed within the four months' period provided for in the Mechanic's Lien act in the office of the registrar of titles and a memorial be entered on the register, but as against the owner of the premises the claim may be filed at any time within two years after the completion of the contract. This holding was made in view of the provisions of sections 89 and 90 of the Torrens act requiring such filing and notice of a mechanic's lien. The Kemler Lumber Company filed notice of its liens in the registrar's office, but as the undisputed fact is that it did not file such notice in the time required by the statute it did not acquire a lien as against appellees, who are subsequent purchasers for value.

In *VonTobel* v. *Ostrander,* 158 Ill. 499, this court held that the knowledge by a purchaser of real estate, at the time of his purchase, that a claim for mechanic's lien on the property had been filed with the circuit clerk but that it was filed after the expiration of the four months' period allowed by law will not affect such purchaser's title in the property. It was also said in that case that the filing of notice nearly ten months after the last payment became due amounted

to no more than if it had not been filed at all, as against a subsequent purchaser. The holding in that case is entirely applicable to this case, as the Kemler Lumber Company filed its notice of lien with the registrar about ten months after the last payment became due to it. It therefore has no lien as against appellees Naumann and the Deckerts, and the court properly held that appellees by their petitions were entitled to have the memorials of the Kemler Lumber Company canceled and removed from the register in the registrar's office, as appellees were subsequent purchasers for value.

As the Kemler Lumber Company was the only one of appellants to file notice of its lien claim against lot 11 in the registrar's office and to have a memorial thereof entered upon the register, the decree of the circuit court as to the petition of Charles J. and Mary J. Deckert for the removal of such memorial will have to be sustained *in toto*. For the same reason the decree as to the petition of Naumann against the lumber company and Johnson must also be sustained as to the lumber company.

Appellant Johnson has shown clearly that his notice of mechanic's liens on lots 12, 13, 14 and 15 was filed in apt time in the registrar's office and proper memorials thereof entered on the register. He thereby perfected his liens on said lots, and it is unquestioned that the liens were still in force when the suit in foreclosure was filed in the superior court. The claim of appellees is that he lost his liens at the expiration of the two-year period within which suit must be commenced to enforce the liens because of his failure to comply with the provisions of section 84 of the Torrens act. Section 84 provides: "No suit, bill or proceeding at law or in equity, for any purpose whatever affecting registered land, or any estate or interest therein, or any charge upon the same, shall be deemed to be *lis pendens* or notice to any person dealing with the same, until a certificate of the pendency of such suit, bill or proceeding under the hand

and official seal of the clerk of the court in which it is pend-
ing shall be filed with the registrar and a memorial thereof
entered by him upon the register of the last certificate of
the title to be affected." (Harker's Stat. 1035.) It is not
contended that the beginning of the foreclosure proceed-
ings affected in any way the lien of Johnson created by the
filing of his claim in accordance with the provisions of sec-
tion 89 of the act, and, manifestly, no such claim could be
made. When a claim is filed within four months, as pro-
vided in section 7 of the Mechanic's Lien act, the lien
attaches, as against subsequent purchasers, as of the date
of the contract with the contractor, (*Hacken* v. *Isenberg,
supra; Boyer* v. *Keller,* 258 Ill. 106; *Pittsburg Plate Glass
Co.* v. *Kransz,* 291 id. 84;) but the lien ceases to exist if
suit is not filed within two years, as required by section 9
of the Mechanic's Lien act. If the suit of Johnson had
been prosecuted to a decree within this two-year period, and
a certificate stating the date and purpose of that decree, or
a certified copy of the decree, had been filed in the office
of the registrar and a memorial of the same entered upon
the register of the last certificate of title to be affected, as
provided by section 85 of the Torrens law, his failure to
comply with the requirements of section 84 would not have
affected his lien. The general purpose of the Torrens sys-
tem of registration of land titles has been variously stated
by courts and other authorities to be, to provide a system
of registration whereby it shall be possible for an intend-
ing purchaser of land to ascertain by an inspection of the
register who may convey to him the title; (*Glos* v. *King-
man & Co.* 207 Ill. 26;) to create an independent system
of registration of land titles so that all instruments intended
for the purpose of passing or affecting any title to real es-
tate registered thereunder should be filed and registered in
the office of the registrar and at no other place; (*Hacken*
v. *Isenberg, supra;*) to establish a system for the registra-
tion of title to land whereby the official certificate will al-

ways show the state of the title and the person in whom it is vested; (*Robinson* v. *Kerrigan*, 151 Cal. 40, 90 Pac. 129;) to establish a method by which the title to a particular piece of land will be always ascertainable by reference to a certificate issued by a government official, made by law conclusive in that regard; (3 Tiffany on Real Property,—2d ed.—2273;) and to establish a system for the registration of title to land whereby the official certificate will always show the state of the title and the person in whom it is vested. (23 R. C. L. 273.) The basic principle of the system is the registration of the title to the land, instead of registering, as under the old system, the evidence of such title. (34 Cyc. 598.)

These general statements are the ideal which it was hoped the system would reach, but the practical question presented is how near the ideal may be approached in view of other established rules of property. The certificate of title is not always entirely conclusive, (*In re Peters*, 119 Minn. 96, 137 N. W. 390; Annotation, the Torrens Law, L. R. A. (1916D) 14 *et seq.;*) but the difficulties discussed in the authorities last cited are not presented in this proceeding. At the time the Torrens law was enacted the provisions of the Mechanic's Lien act with respect to filing the claim and enforcing the lien were substantially the same as they are now, and it must be presumed that the legislature had the Mechanic's Lien act in mind at the time it enacted the provisions of the Torrens law affecting mechanics' liens. By the enactment of the Torrens law the legislature did not change the procedure by which mechanics' liens are enforced, but specifically provided that the proceedings to enforce the lien should be the same as the proceedings provided in the Mechanic's Lien act. The legislature did, however, place an additional burden upon the mechanic or material-man who seeks to charge registered land with a mechanic's lien, by requiring that notice of the suit to enforce the lien must be noted upon the register of the cer-

tificate of title to the land affected or the suit would not be deemed to be *lis pendens* or notice to any person dealing with the land. The fact that the legislature imposed this additional burden upon the mechanic or material-man who seeks to enforce his lien against registered land does not affect the validity of section 84 of the Torrens law. (25 R. C. L. 905; *State* v. *American Surety Co.* 91 Neb. 22, 135 N. W. 365.) An act complete in itself is not necessarily within the prohibition of section 13 of article 4 of the constitution merely because it repeals, modifies or amends by implication a former act. *Holmgren* v. *City of Moline*, 269 Ill. 248; *New York Central Railroad Co.* v. *Stevenson*, 277 id. 474; *People* v. *Stokes*, 281 id. 159.

We have already held that the only person entitled to have a memorial of a lien entered upon the register is the person entitled to enforce the lien. (*Curtis* v. *Haas*, 298 Ill. 485.) Appellant Johnson was therefore required, by the provisions of section 84 of the Torrens law, to cause a memorial to be entered on the register within the two-year period in which he could bring suit to enforce his lien that he had brought such a suit and that the suit was pending in order to bind appellee Naumann, who is a subsequent purchaser of the registered lands sought to be charged with appellants' liens. The court properly canceled and removed from the register the memorial of Johnson's liens.

Appellants complain that the court erred in not allowing them to further cross-examine the witness Wise with the view of showing that Wise's purchase of the lots was not in his own interest and in his own right, but was, in fact, a purchase by him in the interests of Seeman and Pauling, the owners of the trust deeds. The court allowed some of this cross-examination, but it was not material to any issue in the case. Wise, as a purchaser from the trustee in bankruptcy, took his title subject to all existing liens against the bankrupts. Seeman and Pauling were creditors, and their claims as creditors would not be affected in any

way by the fact, if it was a fact, that Wise simply acted as their agent in purchasing the property. Naumann and the Deckerts were subsequent purchasers and were likewise not affected by the notice of the lumber company of its liens filed with the registrar, as such notice was not filed in time and amounted to no notice whatever of its liens to either creditors or purchasers.

The decree of the circuit court is affirmed.

*Decree affirmed.*

Mr. JUSTICE DUNCAN, dissenting:

The decision of the court as to the claim of the Kemler Lumber Company is clearly right for the reason that it never did establish its mechanic's lien, as it failed to have the memorial thereof entered on the register in the registrar's office within the four months, as required by section 89 of the Torrens act and section 7 of the Mechanic's Lien law. Johnson did register a memorial of his lien on the register, as required by section 89 of the Torrens act and section 7 of the Mechanic's Lien law, and therefore established his mechanic's lien. This is recognized in the decision of the court, and there is absolutely no question about Johnson thus establishing his lien. But the court holds that Johnson lost his lien by not giving or having given notice of *lis pendens* after he began foreclosure proceedings with reference to his lien. In this holding I think the court erred. The principles involved in this decision are of the gravest and most important character and involve the consideration of nearly all the principal sections of the Torrens act. It will therefore be necessary to at least refer to those sections for consideration so as to be properly understood in this dissent.

It is not disputed that the Kemler Lumber Company filed suit to foreclose its supposed lien within the two years, as required by section 9 of the Mechanic's Lien law, and that it made Wise and Johnson and all other parties then

having any interest in the lots in question parties defendant to its bill. It is also unquestioned that Johnson in that foreclosure suit, after he was made a party defendant, filed his intervening petition within the two years aforesaid to foreclose his mechanic's lien, of which lien he had already given notice by having entered on the register in the registrar's office the proper memorial thereof, as required by the Torrens act. This was the only way in which he could foreclose his lien after the Kemler Lumber Company brought its suit, as only one suit can be maintained under the Mechanic's Lien law to foreclose the various liens for labor, materials, etc., furnished by the various parties. (*Granquist* v. *Western Tube Co.* 240 Ill. 132.) It must be admitted, then, that Johnson could not bring a new suit to foreclose his lien but did the only thing then left open to him to do,—intervene in the Kemler Lumber Company's suit to foreclose his lien. The failure of the Kemler Lumber Company to foreclose its lien, or to be able to do so, does not and will not militate against Johnson foreclosing his lien on his intervening petition.

Just at this time I desire to emphasize and make plain the real point of difference between the court's views and my views as to Johnson's lien. The court decides that he lost his lien because he and the Kemler Lumber Company failed to give notice of *lis pendens* as to the foreclosure suit. My views are, the lien being already established by the beginning of that suit in time, that he lost nothing as to his simple mechanic's lien by failing to give the notice, but is only penalized by that failure, under the Torrens act, by losing his costs made in court. All Johnson had to do to continue that simple lien in force was to bring his suit in time, which he did do, while the court decides he has to both bring his suit in time and also notify Naumann and all other subsequent purchasers that he had brought his suit in time by giving notice of *lis pendens* through the registrar's office. Neither the Mechanic's Lien law nor the

Torrens act requires notice of *lis pendens* by Johnson in order to continue his simple lien already established and registered.

When notice of a mechanic's lien is recorded in the proper recorder's office within the four months, as provided by section 7 of the Lien law, all the holder of the lien has to do to continue in force his registered lien is to begin foreclosure proceedings within two years, as provided by section 9 of the act. By the express provisions of sections 89 and 90 of the Torrens act the same is true under that act. Section 89 in substance provides that when a mechanic's lien is properly registered in the registrar's office within the four months required by section 7 of the Mechanic's Lien law, proceedings may be had to enforce the lien as provided by the Mechanic's Lien law. By section 90 it is provided that no statutory or other lien shall be deemed to affect the title to registered land unless a memorial thereof is entered upon the register "as herein provided." That is the equivalent of saying that when it is so registered such registered lien does affect registered land. It is thus seen that there is no difference, so far, in foreclosing liens on registered land and unregistered land, as those two sections of the Torrens act are the only two sections specially bearing on mechanics' liens and the foreclosure of such liens.

Now let us see just what effect the two sections of the Torrens act relating to notice of *lis pendens* have in the foreclosure of mechanics' liens. Section 84 is the general section on *lis pendens,* and simply provides that no suit, bill or proceeding at law or in equity, for any purpose whatever, affecting registered land, or any estate or interest therein, shall be deemed to be *lis pendens* or notice to any person dealing with the same, until a proper certificate of the pendency of such suit, bill or proceeding shall be filed with the registrar and a memorial thereof entered by him upon the register of the last certificate of title to be affected.

There is absolutely no requirement in this section or any-
where else in the act that notice must be given to save or
to continue in force any lien already properly registered in
the registrar's office, but the court holds that very propo-
sition and that Johnson lost his lien already registered by
not giving such notice. Now, this holding of the court is
shown to be error by considering section 66 of the Tor-
rens act, which is the special section on *lis pendens* appli-
cable to mechanics' liens and mortgages. That section ex-
pressly provides that all charges upon registered land, or
any estate or interest therein and any rights thereunder,
may be enforced as now allowed by law, and all laws with
reference to the foreclosure and release and satisfaction of
mortgages shall apply to mortgages upon registered lands,
or any estate or interest therein, except "as herein pro-
vided," and except that until notice of the pendency of
any suit to enforce or foreclose such charge is filed in the
registrar's office and a memorial thereof entered on the
register, the pendency of such suit shall not be notice to
the registrar or any person dealing with the land or any
charge thereon. This latter section was apparently over-
looked by the court in its decision, and it is *the section* ap-
plicable to the foreclosure of mechanics' liens.

Note carefully just what effect failure to give notice of
*lis pendens* has and what the penalty is for failure to give
such notice. Simply and plainly stated, it is that the pend-
ency of such suit shall not be notice to the registrar or any
person dealing with the land. Section 66 further provides
that the pendency of such suit shall not be a charge on the
registered land. What does that mean? Simply this: that
the pendency of such suit,—that is, the costs made there-
by,—shall not be a charge on the land. It does not mean
what the court decides,—that the costs of the suit shall not
be a charge on the land and in addition thereto the lien-
holder shall lose his simple lien already registered. Every
section of the Torrens act applicable to the case now in

301—32

hand shows clearly and conclusively that the above is the sole effect and the sole penalty on Johnson for his failure to give notice of *lis pendens* or notice of the pendency of his foreclosure suit.

Section 54 of the Torrens act provides that a deed, mortgage, lease or other instrument purporting to convey, transfer, mortgage, lease, charge or otherwise deal with registered land, or any estate or interest or charge upon the same, other than a will, or a lease not exceeding five years where the land is in actual possession of the lessee or his assigns, when registered in the registrar's office, as required by the act, shall transfer, mortgage, lease, charge or deal with the land according to the purport and terms of the deed, mortgage, lease or other instrument so registered. Section 40 provides that the registered owner of any estate or interest in land brought under the act shall, except in case of fraud, hold the same subject only to such estate, mortgages, liens, charges and interests as may be noted in the last certificate of title in the registrar's office and free from all others, etc. This means, also, that he holds the land subject to the registered mortgages, liens, charges and interests noted in such last certificate of title. Section 45 provides that whenever a memorial or notation has been entered as permitted by the act, the registrar shall carry the same forward upon all certificates of title until the same is canceled in some manner authorized by the act. This means that the same cannot be presumed by subsequent purchasers to be released or lost unless stated on the register, as provided by the act. Section 65 provides that a release, discharge or surrender of a charge or any part thereof, or of any part of the land charged, may be effected in the same way as provided in case of a transfer,—that is, by entering on the register, opposite the charge, a memorial of such release, etc. Sections 53 and 92 provide that the address of the person presenting any charge or lien or mortgage for registration shall be indorsed on the instrument so

presented, and that such address may be changed from time to time by the person giving the registrar notice of such change, and all notices to such person may be served on him at such address. This means that a registered owner must be dealt with as having a real registered interest or charge against the land, and that subsequent purchasers cannot presume he has no interest and for any reason treat him as having no interest unless the record shows that it has been canceled or released as provided by the act. It also means that such registered lienholder must stand ready at all times to answer notice served on him at such last address and to be ready to accept the amount of his lien as last registered and in full satisfaction thereof.

The basic principle of the Torrens system is the registration of the title to the land instead of registering, as under the old system, the evidence of such title. (34 Cyc. 598.) Any existing liens and incumbrances are noted upon the record and the certificate of title, and the holder acquires an indefeasible title to the property, free from all claims and incumbrances, except those noted on the record. The property is also subject to certain claims for taxes and other incumbrances which are not properly matters of record. (Ibid. 605.) Under the Illinois act, as under all Torrens laws, a title in fee that is once registered continues to be the title to the land until another title is registered that abrogates or supersedes it. When a lien or claim is registered under the act and is noted on the certificate of title, as Johnson's was in this case, it continues to be a claim or lien on the land and must be so regarded until it is shown on the record canceled or discharged as provided by the act, or until the claim or lien changes into another form of lien and is registered in its new and changed form. All parties, whether registered owners or other parties dealing with the land, are required to treat a claim or lien thus registered as an existing and valid claim or lien until canceled as required by the act. In other words, the basic prin-

ciple of the Torrens system is that the register and the certificate of title at all times show the complete title and the true title to the land, and that all claims and liens noted thereon are, in fact, claims and liens according to the purport of the memorials thereof entered on the register and certificate. Any other interpretation would lead to absurd results and make the act a pit-fall to registered owners and claimants, whom the law specially purports to protect. While the system professedly contemplates that those who deal with registered land shall not be required to search or inquire about public records of claims or liens that are not registered with the registrar or to make inquiry about parties who may have unregistered claims, still the act does require all such parties who deal with registered land to communicate with and deal with those parties who have their claims registered in the register in the registrar's office, and they cannot on any ground presume that such registered claims are discharged, abandoned or lost. Johnson's lien in this case was registered and entered on the certificate of title. His address was in the registrar's office, so that Naumann could easily communicate with him and pay off and discharge his lien or learn from him that it was canceled or abandoned. He could not presume Johnson had failed to bring his suit in foreclosure. The presumption under the act was, and still is, that his lien is in force. The simple bringing of the suit in the time required continued and extended his lien. Both the Torrens act and the Lien law so provide. The court holds that it is giving notice of such suit brought in the time required by section 9 of the Lien law that continues the lien already registered, and the court, therefore, holds against both the Torrens act and the Lien act.

The lien or claim of a mortgagee or holder of a lien changes in character a number of times during the process of foreclosure and obtaining title by deed from the master in chancery. At every change it requires more to be paid

to the owner of the mortgage or of the lien, and the title or interest acquired at each change, in contemplation of the Torrens act, is registered with the registrar. The first interest or charge registered by the owner is the mortgage or lien claim, and is what I refer to as the simple lien. The next charge or lien contemplated as being registered is notice of *lis pendens,* which adds to the charge of the simple lien the costs for bringing the suit up to the decree, as provided by section 66. The next interest to be registered in the registrar's office is the decree in foreclosure and order for sale, as provided by sections 80 and 85 of the act. The next charge or claim to be registered under the act is the master's certificate of sale, as provided by section 87, and the final registration in the course of obtaining title in foreclosure proceedings is the master's deed itself. Now, the basic principle under the Torrens act is that all subsequent purchasers are only bound in their dealings with registered lands by such title as is registered, and they are sure bound by such title as is registered in the register in the registrar's office. For instance, suppose Johnson in this case had completed his title in foreclosure proceedings and had obtained a master's deed but had only registered his title up to and including the decree in foreclosure. What would have been Naumann's title and rights if he had bought when the register showed Johnson had a decree in foreclosure and what would have been Johnson's rights? Johnson could not have the full fee simple title under his master's deed because he had neither registered the master's certificate of purchase nor the master's deed. He would simply have been entitled to be paid by Naumann the amount of the decree in foreclosure and legal interest thereon and all court costs up to the decree in foreclosure, and Naumann, on payment of the amount of the decree and legal interest and costs up to decree, would have been entitled to the full fee simple title, unincumbered by Johnson's costs made in the sale of the land and in the making of the deed, because that part of

his charge and claim had not been registered. That this is the principle of the Torrens act and the effect of giving *lis pendens* at any stage of the title is as clear as the noonday sun when it is properly viewed and considered. In other words, an owner of a mortgage or lien loses every claim, charge, interest or title in the registered land that he does not register or give notice of, including notice of *lis pendens,* and he loses no interest, charge, lien, claim or title that he does register and give proper notice of on the register in the registrar's office, including all charges saved by giving notice of *lis pendens.* So the decision in this case is in opposition to the very basic principle of the Torrens system, that the complete title is registered and noted on the certificate of title and that the registered title is all true and in force as registered.

Take the case of a plain mortgage registered in the registrar's office and upon which a suit is pending for foreclosure of the same but no notice of *lis pendens* has been given by the mortgagor. What is the effect of a failure to give notice of *lis pendens?* Plainly, simply and only, that a subsequent purchaser, after registry of the mortgage and before notice of *lis pendens,* takes the title free and clear of the costs of the suit on paying the debt and interest due on the mortgage. The mortgagor loses his court costs by failing to give notice of his pending suit but does not lose his mortgage lien. Let us carry this same example one step farther and suppose the mortgage on record in the registrar's office and that the register shows the debt secured by the mortgage has been or may be barred by the Statute of Limitations, and suppose, also, the mortgagee has a suit pending to foreclose the mortgage but has not given notice of *lis pendens.* Now, can the subsequent purchaser presume the debt is barred by the Statute of Limitations and absolutely disregard the rights of the mortgagee, or can the mortgagee come in and show that the debt was not so barred

but had been kept alive by binding agreement to extend the time or by payments? The answer is plain and obvious that the mortgagee will still lose his court costs but may effectually insist that his lien is still good, as it is registered and has never been barred or released or satisfied. Johnson, the lienholder, is just in that same position. His lien was registered. He brought his suit in time, which kept his lien alive and continued it by the provisions of section 9 of the Lien law and section 89 of the Torrens act, but he gave no notice of *lis pendens*. He therefore loses the court costs paid out by him but not his lien, which was registered and still alive. Naumann is legally bound to redeem from that lien by paying the amount of it and legal interest thereon. The court holds Naumann was justified in presuming, against the facts, that no suit had been brought by Johnson; that a registered lien is no lien on the registered title, against the basic principle of the system, and that it is satisfied or paid although the register does not show such payment or discharge as the Torrens act expressly provides for. The decision is against every provision of the Torrens act that is applicable to this case and is as inequitable as can be. It allows Wise, who was made a party defendant to the foreclosure suit, and who, as the registered owner in fee simple, bought all the lots for less than $200 and which are proven now to be worth $37,500, to sell them for $8500 in cash to Naumann and Deckert, subject to the trust deeds mentioned in the decision of the court, and it permits a subsequent purchaser to treat Johnson as having no valid claim or lien whatever when Johnson's claim was noted on the register and on the very certificate of title issued to Naumann by the registrar. I therefore dissent.